The STATE of Ohio, Appellee,

v.

STAYTON, Appellant.

[Cite as *State v. Stayton* (1998), 126 Ohio App.3d 158.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970172.

Decided Feb. 6, 1998.

*Ernest McAdams* and *Lisa Allen,* for appellee.

*David J. Scacchetti,* for appellant.

GORMAN, Judge.

Sylvia Stayton appeals from her conviction for obstructing official business in violation of R.C. 2921.31(A). Her conviction was the result of a much publicized incident in which she admittedly tried to prevent a police officer from issuing traffic citations to two parked automobiles by feeding the expired meters. The thrust of her argument on appeal is that, whether viewed as the act of a Good Samaritan or an officious intermeddler, her conduct did not rise to the level of obstructing official business. We disagree.

## I. The State's Case

At trial, the state relied principally upon the testimony of Cincinnati Police Officer Edward Johnson. According to Officer Johnson's account of the incident, on October 24, 1996, he was assigned to patrol duty in the Corryville area. He was in full uniform and wearing his badge. He began issuing citations to automobiles parked on Vine Street at expired parking meters. After ticketing one automobile, he crossed the street to ticket two other automobiles. As he stood in the street reading the license plate of the first automobile and writing his name and badge and district number on his citation pad, Stayton approached the meter. He asked her if the automobile was hers. She replied that it was not. When he told her not to put money in the expired meter, Stayton inserted a coin, saying, "You're not the police. You have no authority to write parking citations." He then explained that she could be arrested for repeat metering, to which she replied, "You've got to be kidding." He told the jury that at this point he was

willing to shrug off Stayton's conduct, and he simply told her to leave. She did not. Instead, she followed him to the second illegally parked automobile when he abandoned his effort to ticket the first automobile. He again ordered her not to put money in the expired meter. She defied him by depositing money in the meter. Officer Johnson then announced that Stayton was under arrest. She responded, "You've got to be kidding." When he began to handcuff her, Stayton began screaming and yelling and pinioning her hands to her sides to avoid being handcuffed. While Officer Johnson was handcuffing Stayton, a crowd of curiosity seekers assembled around them.

Officer Johnson said he did not finish writing the ticket for the first automobile because of past experiences in which a bystander would insert coins in an expired meter as he was writing a ticket. When the owner appeared and saw that the meter was unexpired, the owner would contest the citation. Officer Johnson testified, "To avoid confrontation, I just let it go." He testified that he did not ticket the second automobile because he became preoccupied with arresting Stayton.

Stayton was charged with obstructing official business and disorderly conduct. The jury found her guilty of the first charge, but acquitted her of the second. The trial court sentenced her to pay a $500 fine and the court costs.

## II. Sufficiency of the Evidence

In her second assignment of error, which we consider the crux of her appeal and therefore address first, Stayton argues that her conviction for obstructing official business was based upon insufficient evidence because, as a matter of law, the act of inserting coins in an expired meter does not constitute obstructing official business.

R.C. 2921.31, under which Stayton was convicted, states:

"(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

### 1. Privilege

Stayton relied heavily in oral argument upon the view that because the state failed to prove that her conduct in refeeding the meter was *per se* illegal, her behavior toward Officer Johnson must be considered privileged within the meaning of the statute. She points out that Cincinnati Municipal Code 509–8 only prohibits a person from depositing a coin in a parking meter for the purpose of obtaining an extension of parking time beyond the *maximum* time allowed on the meter. This being so, she argues, Officer Johnson had no way of knowing

whether the coin she inserted extended the time past the maximum time limit, and therefore the jury had no basis to conclude that what she was doing was illegal.

This argument fails for two reasons. First, Stayton incorrectly equates "privilege" with any conduct that is not illegal. This is not the law—if it were, no police officer stepping out into a busy street to direct traffic would be safe from motorists insisting upon their "privilege" to proceed unimpeded within the posted speed limit. "Privilege" in the context of R.C. 2921.31 refers to a positive grant of authority entitling one to deliberately obstruct or interfere with a police officer performing his lawful duty. For example, Stayton, once she was arrested, had a legitimate constitutional privilege under the Fifth and Sixth Amendments to impede any further police investigation by remaining silent and insisting upon the presence of counsel before any interrogation took place.

Second, by focusing merely on the legality of her feeding of the meter, Stayton ignores the totality of her alleged conduct. This is not a case in which Stayton is accused merely of feeding parking meters. Rather, Stayton is accused of directly confronting and deliberately disrupting a police officer while he was writing citations for automobiles subject to citation. If the jury chose to believe Officer Johnson, in addition to feeding the meters, Stayton challenged the officer's authority and suggested, despite his uniform and badge, that he was not a genuine police officer. Further, after she succeeded in stopping him from writing a ticket for the first vehicle, she followed him to the next automobile and fed the meter for the same purpose after the officer told her not to do so. Stayton can point to no privilege which allows her to interfere with a police officer in the performance of his lawful duties in such a manner.

2. Hamper or Impede with Purpose to Prevent, Obstruct, or Delay

Stayton next argues that her conviction is unsupported by the evidence because Officer Johnson, had he chosen, could have simply ignored her attempt to interfere and continued writing his tickets. In this regard, Stayton points out that she did nothing to physically stop Officer Johnson from writing the ticket, such as grabbing his pen. Furthermore, she argues, as this court held in *Oxford v. Cavalier* (Feb. 28, 1979), Butler App. No. CA 78–06–0057, her act of feeding the meter did not in any way illegally preclude Officer Johnson from ticketing the parked automobiles, since the offense is complete at the time the meter expires.

Stayton's argument would have merit, however, only if the offense involved were "preventing" official business rather than "obstructing" official business. There is no element in R.C. 2921.31(A) requiring the state to prove that the offender's conduct prevented a public official from doing his job.

Rather, the statute is satisfied by "*any* act which *hampers* or *impedes* a public official in the performance of his lawful duties."

■ That is not to suggest that every act that can conceivably be said to hinder a police officer rises to the level of criminal conduct. Certainly there is a level of hindrance that is simply too casual, remote, or indirect to be punishable under the statute. Although entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement. Interference with the police by citizens must, therefore, be necessarily viewed as a continuum along which, at a certain point, the line is crossed.

The crossing point must involve some form of conduct beyond mere argument. Nothing in our decision today should be construed as denigrating a citizen's right to verbal protest under the First Amendment. This court has previously held that, provided that the language does not constitute fighting words, a citizen's verbal assault on a police officer does not, standing alone, constitute criminal conduct. In *State v. Sansalone* (1991), 71 Ohio App.3d 284, 593 N.E.2d 390, for example, we held that the defendant's calling a police officer "asshole" after he gave her a parking ticket did not support a charge of resisting arrest.

Clearly, had Stayton merely stayed on the sidewalk and launched a verbal tirade against Officer Johnson, the result would be different here. Stayton, however, did not stay on the sidelines, nor did she limit her protest to mere words. Although she contends that Officer Johnson could have ignored her behavior, she can point to no authority which required him to do so. Perhaps another police officer might have tolerated her antics; that Officer Johnson's patience finally wore out, however, was the risk Stayton took when she continued to interfere.

Finally, it should be noted that Officer Johnson testified that he did, in fact, try to ignore Stayton. His initial reaction was to tell her to leave—she did not. He warned her that she was subject to arrest—she mocked him. He asked her not to feed the second meter—she fed it anyway. According to Officer Johnson, it was only after she turned with him to the second automobile and again inserted money in the meter after he asked her not to that he arrested her. The fact that Stayton repeated her conduct as to the second automobile is significant, for at that point Stayton had to be aware that she had stopped him from writing a ticket for the first one. Thus the jury clearly had an adequate basis to conclude beyond a reasonable doubt that her behavior had crossed the line between fair protest and actual obstruction.

## 3. The Test for Sufficiency

■■ In reviewing a challenge to a criminal conviction for insufficiency of the evidence, a reviewing court asks simply whether there was adequate evidence for the case to have gone to the jury, in other words, whether there was some evidence on all the elements of the crime. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. As Justice Cook noted in her concurrence in *Thompkins*, "[o]n review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." *Id.* at 390, 678 N.E.2d at 549.

Unarguably Officer Johnson's account, if believed, was sufficient for the jury to have found that Stayton purposefully impeded or hampered him in the performance of his official duties. Although Stayton relies upon this court's decision in *Oxford, supra,* in which we overturned the defendant's conviction for obstructing justice based upon his feeding of expired parking meters, we find that case factually distinguishable.

In *Oxford,* the defendant was observed feeding expired parking meters three or four automobiles ahead of the police officer ticketing vehicles. Although the police officer observed the defendant, there is nothing in the decision to indicate that the police officer requested the defendant to desist, or that the defendant verbally confronted the police officer, challenging his authority and *bona fides* as Stayton is alleged to have done here. There is, further, no indication in *Oxford* that the defendant was feeding the meters of the same vehicles that the police officer was in the process of ticketing, or following him from one vehicle to the next as Stayton is alleged to have done. Finally, we also noted in *Oxford* that the state failed to produce any evidence that the defendant had acted "with purpose" to prevent the police officer from ticketing illegally parked automobiles, whereas Stayton testified that her actions were committed with the hope of stopping Officer Johnson from writing parking tickets.

Finally, we held in *Oxford* that the state failed to produce any evidence that the defendant was acting "without privilege." Specifically, we held that there was no evidence to show that the drivers of the vehicles had not authorized or requested the defendant to check the meters—"or even that [the defendant] was not the owner of at least one of the vehicles." *Id.* at 3. In contrast, Officer Johnson testified that he asked Stayton if the first automobile belonged to her, to which she replied in the negative. When she testified, Stayton acknowledged that she denied owning the second vehicle. From this testimony and the totality of the exchange between Stayton and Officer Johnson, we hold that there was sufficient direct evidence from which the jury could have reasonably inferred that Stayton was not privileged or licensed to act as she did.

We conclude, therefore, that there was sufficient evidence for the jury to conclude that Stayton, without privilege to do so, purposefully hampered or

impeded Officer Johnson as he attempted to write parking tickets for the two vehicles involved.

Stayton's second assignment of error is, therefore, overruled.

### III. Manifest Weight of Evidence

 In her third assignment of error, Stayton argues that her conviction was contrary to the weight of evidence. In reviewing a verdict challenged on this basis, this court may disagree with the fact finder's resolution of facts, but only if we can conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins, supra,* 78 Ohio St.3d at 387, 678 N.E.2d at 547. The power to reverse a conviction and grant a new trial is discretionary and "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721.

Concededly, Stayton described her encounter with Officer Johnson much differently than he did. According to Stayton, she put the money in the two meters before Officer Johnson told her not to do so, and she adamantly denied ever accusing him of not being a genuine police officer. She did admit, however, that she interrupted him as he stood out in the street writing the first ticket, inserted money in the meter even though he told her that he had already begun issuing the citation, and, when told by Officer Johnson that she was not supposed to be feeding the meter, advised him—despite his badge and uniform—that he was not supposed to be writing tickets.

 It is well settled that the jury, being able to view the witnesses and observe their demeanor in response to questioning and cross-examination, is uniquely situated to gauge matters of credibility. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Afforded this unique vantage point, the jury could reasonably have chosen to believe Officer Johnson's version of events and disbelieve Stayton's. As a reviewing court, we cannot say that Stayton's testimony was any more credible than Officer Johnson's. Nor, based upon Officer Johnson's testimony, can we say that the jury committed a miscarriage of justice in finding Stayton guilty of impeding or hampering a police officer in the performance of his duties. Under Officer Johnson's version of the incident, Stayton, without any right to do so, interrupted him and deliberately began trying to stop him from writing parking tickets for no other reason than that she did not like the fact that he was doing what he was paid to do by the taxpayers of Cincinnati: enforcing the meter law.

It should be noted, given the publicity that this case has garnered and the cries of outrage that it has inspired, that Stayton was found guilty by a jury of her fellow citizens and not by a jury of Officer Johnson's fellow police officers. There has been no claim that the jury was improperly instructed on the law or that it engaged in any misconduct. Significantly, there has been no constitutional challenge to the statute as being vague or overly broad. Nor can it be said that the jury was conviction-prone, since it acquitted Stayton of the charge of disorderly conduct. The jury, as instructed by the trial judge, sifted through the conflicting versions of events and concluded beyond a reasonable doubt that Stayton's conduct crossed the line and unlawfully impeded Officer Johnson in the performance of his assigned duties. Although in oral argument counsel for Stayton decried this case as too trivial for prosecution, that consideration is beyond the scope of appellate review. The wisdom of instituting a prosecution is exclusively within the province of the prosecutor. See *State v. Bertram* (1997), 80 Ohio St.3d 281, 685 N.E.2d 1239. As demonstrated by its verdict, the jury, acting in its role both as fact finder and as the conscience of the community, did not consider Stayton's conduct too trivial to rise to the level of criminal conduct.

We hold, therefore, that Stayton's conviction was not contrary to the weight of the evidence. Her third assignment of error is, therefore, overruled.

### III. Motion to Suppress

In her first assignment of error, which we turn to next, Stayton argues that the trial court erred when it overruled her motion to suppress evidence of her conduct following her arrest. Stayton's argument is that since her arrest, at least in her view, was illegal, any evidence of her conduct following her arrest was tainted by the invalidity of her arrest and should not have been presented to the jury. As Stayton's attorney conceded at oral argument, however, given the fact that Stayton was acquitted of disorderly conduct, the only charge based on her postarrest behavior, this assignment is essentially meaningless. Further, it is clear from our resolution of the first and second assignments of error that Officer Johnson did have probable cause to arrest Stayton for obstructing official business.

Stayton's first assignment of error is, therefore, overruled.

### IV. Admission of Evidence

In her fourth assignment of error, Stayton argues that the trial court erred by allowing the state to present a witness to testify to the importance of a regular turnover of parking spaces in the Corryville area. Specifically, she argues that the trial court should not have permitted Police Captain Ron Twitty to testify that the business owners in the area had a particular interest in

enforcement of the parking-meter laws. According to Stayton, this testimony was irrelevant to the issue whether she obstructed Officer Johnson, and its introduction prejudiced her defense by portraying her acts as detrimental to the business interests of the community. We disagree.

Significantly, in his opening statement, Stayton's counsel argued that "[t]his case is not about a parking meter. It's about a lot more. It's about right and wrong." He further suggested that Officer Johnson was "having a bad day," needed to take a deep breath and step back, and was not knowledgeable about parking law. He then told the jury that once it acquitted Stayton, "it will make you all free." He stated that "[f]reedom of speech, freedom of expression, freedom of communication, freedom of association; those are all things that are critical in making decisions in this case."

Given the broad tenor of counsel's opening remarks, it would be disingenuous not to acknowledge that implicit in Stayton's defense was an invitation for the jury to weigh the importance of the meter law against her personal freedom. Even were this not the case, Captain Twitty's testimony was probative evidence that enforcing the meter law was an important part of Officer Johnson's official duties. It should be further noted that upon cross-examination Stayton's counsel elicited from Captain Twitty the concession, helpful to her defense, that overzealous enforcement of the law, without regard to the circumstances, engenders disrespect for the law and therefore a police officer has discretion when to use his arrest and citation powers.

We hold that Captain Twitty's testimony was probative of a consequential fact—the importance of the meter law as it formed a part of Officer Johnson's enforcement duties, as well as the discretion he possessed as part of that duty—and was therefore admissible under Evid.R. 401. The probative value of this testimony was not substantially outweighed by the risk of unfair prejudice. See Evid.R. 403.

Stayton's fourth assignment of error is, therefore, overruled.

## V. Bill of Particulars

In her fifth and last assignment of error, Stayton argues that the trial court erred by allowing the state to proceed upon a theory that she hampered Officer Johnson, when it described her conduct in the bill of particulars as actually having prevented him from writing tickets. Stayton contends that she was prejudiced by this alleged variance, as she prepared her defense in reliance on the bill of particulars and its use of the word "prevent."

The "limited purpose" of the bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged

offense." *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 OBR 410, 412, 478 N.E.2d 781, 784. The bill of particulars provided by the state in this case gave a rather inclusive summary of Stayton's alleged conduct, including her action in feeding the meter and her challenge to Officer Johnson's authority and *bona fides* as a police officer. After describing that conduct, the bill of particulars stated that Stayton's actions "prevented the officer from writing tickets for expired meter violations." The use of the word "prevented" in this context conveyed a factual rather than a legal significance, since R.C. 2921.31 does not contain an element requiring the state to prove that Stayton actually prevented Officer Johnson from writing the parking tickets. This case is distinguishable from the case in which the offense charged has alternative elements, and the state elects one element in the bill of particulars and then attempts to prove another at trial. There the defendant can reasonably argue reliance and surprise. Here there is no valid reason why the state would have deliberately assumed a greater burden of proof than the law required. Furthermore, it cannot be said that by arguing that Stayton impeded or hampered Officer Johnson, the state abandoned its original theory of the case and was introducing a "distinct and unexpected theory of guilt." See *State v. Oden* (Apr. 6, 1983), Hamilton App. No. C–820331, unreported, 1983 WL 8782. Accordingly, we find no basis to support Stayton's assertion that her preparation of the case was prejudiced.

Stayton's fifth assignment of error is overruled.

In conclusion, we hold that the jury was presented with sufficient evidence that Stayton obstructed Officer Johnson in the performance of his official duty, and that in deciding that she did so without privilege, the jury did not lose its way. Furthermore, we find no merit in the other errors she asserts. Accordingly, we affirm her conviction.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

PAINTER, P.J., dissents.

PAINTER, Presiding Judge, dissenting.

R.C. 2921.31 is titled "Obstructing Official Business." Its very name should engender skepticism in a free society.

The prosecution does not contend that Stayton was necessarily committing a crime when she put money in the meters—remetering is an offense only when the amount involved is more than the maximum allowed. So Stayton is being prosecuted for disobeying Officer Johnson's order not to feed the meter, on the theory that this act hampered him in ticketing the car at the expired meter. But

the officer could have ticketed the car in spite of the additional quarter inserted by Stayton. The offense was complete when the meter expired, and the bell cannot be unrung by the later deposit, as this court correctly held in *Oxford v. Cavalier* (Feb. 28, 1979), Butler App. No. CA 78-06-0057, unreported.

Because the officer could have proceeded to ticket the car anyway, it is difficult to see how he was hampered by Stayton's presence. Thus, just on the bare requirements of the law on its face, Stayton committed no crime.

While the majority states that actions allegedly interfering with police must be "viewed as a continuum along which, at a certain point, the line is crossed," it still upholds the conviction here. When asked at oral argument to think of a lesser way in which someone could obstruct the police, the prosecutor could not name one. If there is no lesser obstruction, the continuum is an illusion, and any argument with authority is punishable conduct in this state.

The tendency is to support the police, especially where, as here, the officer was doing his job in good faith, though under a slight misconception of the arcane law of parking-meter enforcement. But support of law enforcement does not mean prosecution of citizens for the most illusory acts of possible disobedience to authority.

Surely it would have been better for all concerned if Stayton had gone on her way when requested by the officer. Her conduct might be characterized as aggravated foolishness. When she did not leave, the officer should have written the tickets, paying no attention to her—there is no allegation that he could not have simply ignored her. Instead, she was handcuffed, hauled off to jail, and charged with an offense with a possible penalty of ninety days' incarceration.

Every unpleasant confrontation with the police need not result in an arrest. And every arrest need not result in a prosecution. Because the majority today makes minor argument with government officials a crime, I dissent.