OPINION
{¶ 1} On September 6, 2003, appellant, Dustin Sommer, a juvenile, was charged with obstructing official business in violation of R.C. 2921.31, resisting arrest in violation of R.C.2921.33 and underage consumption in violation of R.C. 4301.69.
 {¶ 2} On December 1, 2003, appellant filed a motion to dismiss, claiming lack of probable cause to arrest. A trial before a magistrate was held on January 4, 2004. Prior to trial, a suppression hearing was held and the underage consumption charge was dismissed. By decision filed January 20, 2004, the magistrate found appellant was not delinquent of resisting arrest, but was delinquent of obstructing official business. The trial court approved and adopted the magistrate's decision. By decision filed January 22, 2004, the magistrate recommended a three hour ride-along with any police department, a fifty dollar fine plus court costs and a driver's license suspension. The trial court approved and adopted the magistrate's decision.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "The verdict of the court is against the manifest weight of the evidence and contrary to law."
 I {¶ 5} Appellant claims the trial court's finding of delinquency by virtue of obstructing official business was against the manifest weight of the evidence. We disagree.
 {¶ 6} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also,State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 7} Appellant was found delinquent of obstructing official business in violation of R.C. 2921.31 which states, "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 8} On the evening in question, Jackson Township Police Officer Thomas Calhoun was called to a residence on Opal Street in Jackson Township in response to an alleged assault. T. at 29-30. During his investigation, Officer Calhoun noticed a strong odor of alcohol on the breath of several teenagers. T. at 30-31. Officer Calhoun's investigation took him into the residence wherein he observed appellant "sleeping." T. at 33. Officer Calhoun attempted to "rouse" appellant, but appellant was non-responsive. After Officer Calhoun announced that he was going to call an emergency squad to examine appellant, appellant "sat straight up in bed and began to verbally attack" Officer Calhoun. T. at 34. Appellant refused to state his name and was belligerent. T. at 35-36. Thereafter, appellant was charged with obstructing official business.
 {¶ 9} Appellant argues his refusal to give his name to Officer Calhoun was not an "act" as contemplated in the statute. Appellant argues the mere omission of his name did not constitute an "act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 10} In support of this argument, appellant cites the case of State v. Stayton (1998), 126 Ohio App.3d 158, 164, wherein our brethren from the First District held the following:
 {¶ 11} "That is not to suggest that every act that can conceivably be said to hinder a police officer rises to the level of criminal conduct. Certainly there is a level of hindrance that is simply too casual, remote, or indirect to be punishable under the statute. Although entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement."
 {¶ 12} The evidence presented establishes appellant failed to give his name or any other personal information to Officer Calhoun upon his request, and was uncooperative throughout the process, including the booking process. T. at 34-39, 46, 52. Appellant argues Officer Calhoun did not have to ask his name because his mother eventually identified him. This identification came after appellant's arrest and placement in the police cruiser. T. at 38, 40, 46. Depending on what testimony the trier of fact chose to believe, the identification was made either immediately after the mother's arrival or after some persuasion by Sergeant Mitchell at the end of the investigation. T. at 40, 43-44, 51-52.
 {¶ 13} We are not called upon to decide whether Officer Calhoun had the privilege to question appellant as the record is clear that appellant was either non-responsive or faking sleep to avoid police questioning. T. at 33-34. The very narrow issue presented is whether appellant's refusal to identify himself hampered or impeded Officer Calhoun's investigation.
 {¶ 14} The police were summoned to the residence to investigate an alleged assault against a teenager and that teenager was intoxicated. Upon further investigation, Officer Calhoun found appellant "sleeping" and non-responsive with an odor of alcohol on his breath. The trier of fact clearly chose to believe Officer Calhoun's testimony and description of appellant's actions:
 {¶ 15} "Q. All right. Ah given what you knew about some of the other under age consumption that happened in the house that night did you have any concerns for this young man [appellant] when you were unable to awaken him?
 {¶ 16} "A. Yes I did. As I . . . testified earlier he actually ah when he was sighing and moaning and whatnot exhaled and I was rather close and it was my intent to find out his physical well being ah and I noticed a very strong odor of alcohol on his breath as he exhaled.
 {¶ 17} "* * *
 {¶ 18} "A. As soon as I made mention of having to call a squad ah the young man that I tried to awaken sat straight up in bed and began verbally attack me.
 {¶ 19} "* * *
 {¶ 20} "Q. And what did you do in response to that?
 {¶ 21} "A. Well I . . . I attempted to keep calming him down and trying to ascertain who he was. Ah. . . . expressing concerns for his safety ah was he involved in consuming alcohol here. . . . where did he belong. . . . where were his parents. . . . were they aware of what was going on. . . . ah and he continued to ah refuse to cooperate." T. at 34-35.
 {¶ 22} Although we agree that some natural resistance to police authority is to be expected out on the street, we nevertheless find, based upon the evidence presented, that appellant's conduct constituted an act that hampered or impeded Officer Calhoun's performance of his lawful duty to conduct an investigation.
 {¶ 23} The sole assignment of error is denied.
 {¶ 24} The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
Farmer, J., Hoffman, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.