[Cite as *State v. Snyder*, 2025-Ohio-2156.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 24CA14 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Gordon D. Snyder, | : | |
| Defendant-Appellant. | : | **RELEASED 6/12/2025** |

_____

<u>APPEARANCES</u>:[1]

Jeremy Masters, Supervising Attorney, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

_____

Hess, J.

{¶1}   Gordon D. Snyder appeals from a judgment of the Chillicothe Municipal Court convicting him, following a jury trial, of theft, possessing drug abuse instruments, and obstructing official business.  Snyder presents one assignment of error asserting that the trial court violated his rights to due process and a fair trial by convicting him of obstructing official business in the absence of sufficient evidence.  For the reasons which follow, we overrule the assignment of error and affirm the trial court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   Snyder was charged with one count of theft, a first-degree misdemeanor, one count of possessing drug abuse instruments, a first-degree misdemeanor, and one

---

[1] The State did not file an appellate brief or otherwise enter an appearance in this appeal.

count of obstructing official business, a second-degree misdemeanor. He pleaded not guilty, and the matter proceeded to a jury trial.

{¶3} Austin Deel, the loss prevention officer at Menards in Ross County, testified that on March 18, 2024, he was watching the security camera for the area where knives, a high-theft item, are located. He saw Snyder quickly grab a buck knife, the most expensive knife in the store. Deel watched Synder until he went into an aisle outside the camera range. When Snyder exited the aisle, he was no longer carrying the knife. Deel went to the aisle, found the empty packaging for the knife, and returned to the security room to continue watching Snyder on the cameras. Deel saw Snyder grab a pair of sunglasses and a knife sharpener. Deel lost track of Snyder "for a little bit," and when Deel saw him again, the sunglasses were on his head, and he was not carrying the knife sharpener. Snyder went past the last point of sale and exited the store. Deel contacted law enforcement because he suspected Snyder of shoplifting, and Deel confronted him outside the store. Initially, Snyder denied stealing anything, but after Deel pointed out the sunglasses, Snyder gave him the knife, knife sharpener, and sunglasses. Snyder tried to flee but could not because he "lost the chip" in his car keys. Shortly after that, officers arrived.

{¶4} Officer Jonathan Davis of the Chillicothe Police Department testified that he was the first officer to respond to Menards regarding a report of a knife theft. When he arrived, a loss prevention person was outside the store with the suspect and said, "'This is the guy who was stealing,'" referring to Snyder. Officer Davis conducted a pat down search of the suspect and found an uncapped, recently used syringe. He asked the suspect to identify himself. Officer Davis testified that he had reasonable suspicion to

believe a crime had occurred and that Ohio law requires that you identify yourself to an officer who believes you have committed a crime.[2] The suspect gave the name "Danny Stone." Officer Davis asked if he had any identification on him, and the suspect said he did not have any. Officer Davis testified that he saw part of an Ohio ID card in the suspect's wallet, so "I already knew that he was lying to me at that point." He removed the card from the wallet and saw that it had the name "Gordon Snyder" on it and bore a picture which matched the suspect's appearance. Snyder claimed it was his twin brother's ID, and they sometimes got their ID's mixed up.

{¶5}    Because other officers had arrived and could safely detain the suspect, Officer Davis went to his cruiser and used the computer to search for "Danny Stone." He ran Danny Stone's social security number through LEADS, a law enforcement database system. He also ran information from the Ohio ID. The results of his investigation led him to believe the suspect was not being truthful about his identity, and Snyder admitted he lied because he had felony warrants. When Officer Davis was asked how he was "delayed, obstructed or prevented from performing an official or other authorized act within" his "official capacity," he testified that he "was there to investigate a theft," and "failing to identify yourself during a criminal investigation obstructs and hinders my investigation."

{¶6}    After investigating Snyder's identity, Officer Davis went into Menards to speak to loss prevention and look at any evidence that a crime occurred. When Officer Davis went outside again, other officers told him to look at the speedometer in the

---

[2] R.C. 2921.29(A)(1) provides that "[n]o person who is in a public place shall refuse to disclose the person's name . . . when requested by a law enforcement officer who reasonably suspects . . . [t]he person . . . has committed . . . a criminal offense."

suspect's vehicle. He saw drug paraphernalia and then found a loaded syringe, which Synder admitted contained fentanyl, in a sun visor.

**{¶7}** The court admitted into evidence some of Officer Davis's body camera footage. On the footage, Officer Davis asks if Snyder has ID in his wallet, and Snyder denies having any. Almost three minutes into the footage, Officer Davis asks Snyder for his name, and Snyder says, "Danny Stone, Jr." Officer Davis again asks if Snyder has ID in his wallet. Snyder says, "No. No." Officer Davis picks up a wallet, holds up an ID, and says that Snyder is "lying" to him. Snyder says, "No, that's my twin." Officer Davis again says Snyder is lying, and Snyder says, "I promise you that's my twin." Officer Davis says if he finds out that Snyder does not have a twin brother, he is going to jail. Snyder continues to insist he has a twin.

**{¶8}** Officer Davis hands the ID to another officer, who asks questions about the twin brother. Snyder claims he picked up his brother's ID by accident. Officer Davis asks Snyder for his birthday. Snyder gives a date. Officer Davis says, "Is that on that?" It sounds as if the other officer, who appears to still be holding the ID, says the "twin brother" is three years younger. Around 5 minutes and 30 seconds into the footage, Officer Davis gets in the cruiser and uses the computer. At one point, several photographs appear on the screen, and he says, "This is Danny Stone." It sounds like another officer says, "I can cuff him cause he's obviously lying." About 20 seconds later, a little over 7 minutes into the footage, another officer suggests Officer Davis run Danny Stone's "social" to look for an updated BMV photo. The footage was then forwarded to a point where Officer Davis is outside the cruiser again. As Snyder is being placed in the back of the cruiser, he says, "I got felony warrants. That's why I lied."

{¶9} Sergeant Cody Moore with the Chillicothe Police Department testified he also went to Menards, and the trial court admitted some of his body camera footage into evidence. On the footage, it sounds as if Snyder admits to putting the knife in his pocket and giving it back.

{¶10} Snyder moved for a judgment of acquittal on all counts under Crim.R. 29. The trial court found there was sufficient evidence to sustain a conviction on the theft and obstructing official business counts. However, the court found there was insufficient evidence to sustain a first-degree misdemeanor conviction on the possessing drug abuse instruments count and modified that count to a second-degree misdemeanor. The jury found Snyder guilty on all counts, and the trial court sentenced him.

## II. ASSIGNMENT OF ERROR

{¶11} Snyder presents one assignment of error: "The trial court violated Mr. Snyder's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court convicted him of obstructing official business."

## III. SUFFICIENCY OF THE EVIDENCE

{¶12} In the sole assignment of error, Snyder contends the trial court violated his rights to due process and a fair trial by convicting him of obstructing official business without sufficient evidence. Snyder maintains that "Ohio appellate courts have found that in the absence of evidence constituting hampering or impeding that causes a substantial stoppage of a police investigation, a conviction for obstructing official business is not supported by sufficient evidence." He claims there is insufficient evidence that him lying about his name and the ID belonging to his non-existent twin brother caused a "substantial stoppage of the theft and drug instrument investigation." Snyder asserts that Officer

Davis knew he was lying about his name because Officer Davis had Synder's ID and looked at it within seconds of him giving the name "Danny Stone." Officer Davis "similarly discounted" his "attempted ruse about an identical twin brother." Synder asserts that Officer Davis testified that his investigation was hampered by Snyder's failure to identify himself, which cannot be the basis for an obstructing official business conviction. Synder also asserts that Officer Davis failed to explain how his "attempt to avoid identification, which was dashed in seconds upon viewing the identification card in his wallet, constituted a substantial stoppage of his investigation." According to Snyder, his conduct at most "created only a minor delay, annoyance, irritation or inconvenience." He suggests this case is similar to *State v. Vitantonio*, 2013-Ohio-4100 (11th Dist.); *State v. Grice*, 2009-Ohio-372 (1st Dist.); *State v. King*, 2007-Ohio-335 (3d Dist.); and *State v. Wilson*, 101 Ohio Misc.2d 43 (M.C. 1999).

## A. Standard of Review

{¶13} In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997), and following *Jackson v. Virginia*, 443 U.S. 307 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 2019-Ohio-395, ¶ 13 (4th Dist.). "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016), quoting *Jackson* at 319.

### B. R.C. 2921.31(A)

**{¶14}** R.C. 2921.31(A) sets forth the offense of obstructing official business:

No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

**{¶15}** Snyder's sufficiency argument is limited to the "hampers or impedes" element. The statute does not define these terms. The trial court instructed the jury that "'[h]amper or impede' means to keep from moving freely, to bar or to hinder. It must actually have the intended effect of preventing, obstructing, or delaying an official act."

**{¶16}** Not "'every act that can conceivably be said to hinder a police officer rises to the level of criminal conduct.'" *State v. Harris*, 2018-Ohio-4316, ¶ 16 (4th Dist.), quoting *State v. Stayton*, 126 Ohio App.3d 158, 164 (1st Dist. 1998). We have stated:

Certainly there is a level of hindrance that is simply too casual, remote, or indirect to be punishable under the statute. Although entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement. Interference with the police by citizens must, therefore, be necessarily viewed as a continuum along which, at a certain point, the line is crossed.

*Id.*, quoting *Stayton* at 164. "[T]he obstructing official business statute thus '"does not criminalize [every] minor delay, annoyance, irritation or inconvenience."'" (Second instance of bracketed text in original.) *Id.*, quoting *Vitantonio*, 2013-Ohio-4100, at ¶ 14 (11th Dist.), quoting *Lakewood v. Simpson*, 2002-Ohio-4086, ¶ 16 (8th Dist.). "Instead, the statute criminalizes conduct that causes 'some substantial stoppage of the officer's

progress' or that makes the performance of an official duty 'more difficult.'"  *Id.*, quoting *State v. Wellman*, 2007-Ohio-2953, ¶ 17 (1st Dist.), and *State v. Ertel*, 2016-Ohio-2682, ¶ 8 (12th Dist.).

**{¶17}**  A violation of R.C. 2921.31 "does not require the accused to be successful in preventing the officers from doing their job."  *State v. Daily*, 1998 WL 18139, *4 (4th Dist. Jan. 15, 1998).  Moreover, "there is no finite, definitive, or particular time that must elapse to support a conviction for obstructing official business; the record must demonstrate only that the defendant's conduct hampered or impeded the public official's ability to perform his or her official duties."  *State v. Novak*, 2017-Ohio-455, ¶ 16 (4th Dist.), citing *Ertel* at ¶ 10, *State v. Shoemaker*, 2015-Ohio-4645, ¶ 15 (1st Dist.), and *State v. McLaughlin*, 2015-Ohio-4611, ¶ 15 (2d Dist.).

**{¶18}**  "Additionally, courts that consider whether a defendant hampered or impeded an officer generally examine the totality of the defendant's conduct."  *Harris* at ¶ 17, citing *State v. Body*, 2018-Ohio-3395, ¶ 22 (2d Dist.).  "Thus, when a defendant's 'overall pattern of behavior is one of resistance, * * * officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction.'"  (Ellipses in original.) *Id.*, quoting *Lyons v. Xenia*, 417 F.3d 565, 574 (6th Cir. 2005).

### C.  Analysis

**{¶19}**  After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Snyder did an act that hampered or impeded a public official in the performance of the public official's lawful duties.  It is true that Officer Davis gave testimony indicating his theft investigation was obstructed and hindered by Snyder's failure to identify himself, which is not punishable

under R.C. 2921.31(A), rather than by Snyder's act of making false statements, which is. *See Wellman,* 2007-Ohio-2953, at ¶ 10 (1st Dist.) ("A violation of [R.C. 2921.31(A)] requires an affirmative act. A person cannot be guilty of obstructing official business by doing nothing or failing to act"); *State v. Lazzaro,* 76 Ohio St.3d 261 (1996), syllabus ("The making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of R.C. 2921.13(A)(3) and 2921.31(A)"). But Officer Davis's other testimony and body camera footage shows Snyder's lies hampered or impeded Officer Davis in the performance of his lawful duties.

{¶20} Although Officer Davis was not fooled by Snyder's lies, they had more effect on his performance than Snyder merely failing to identify himself would have had. *See generally State v. Buttram*, 2020-Ohio-2709, ¶ 20 (1st Dist.), quoting *State v. Gordon*, 9 Ohio App.3d 184, 187 (1st Dist. 1983) ("If the defendant's act had 'more effect on the performance of the police than silence or a refusal to answer would have had,' then the evidence supports the conviction"). Snyder claimed he was "Danny Stone," and the ID belonged to his twin brother, "Gordon Snyder," which prompted an investigation into both names to confirm Officer Davis's suspicion that Snyder was lying, resulting in a substantial stoppage of Officer Davis's progress. Snyder's lies delayed Officer Davis in investigating the theft and discovering Snyder's outstanding felony warrants, which required his arrest. The fact that Snyder only hampered or impeded Officer Davis in the performance of his lawful duties for a short amount of time is immaterial because again, "there is no finite, definitive, or particular time that must elapse to support a conviction for obstructing official business . . . ." *Novak*, 2017-Ohio-455, at ¶ 16 (4th Dist.). *See*

*generally Buttram* at ¶ 1, 22 (affirming obstructing official business conviction where total interaction took about one minute and 40 seconds); *State v. Easterling*, 2019-Ohio-2470, ¶ 42, 77 (2d Dist.) (affirming obstructing official business conviction where delay occasioned by defendant's conduct was about 90 seconds).

### D. Inapposite Cases

**{¶21}** Snyder's reliance on *Vitantonio*, *Grice*, *King*, and *Wilson* is misplaced.

### 1. *State v. Vitantonio*

**{¶22}** In *Vitantonio*, the appellate court reversed a conviction for obstructing official business premised on the appellant's "failure to immediately answer the persistent knocking of law enforcement investigating a disturbance call at his apartment." *Vitantonio*, 2013-Ohio-4100, at ¶ 1 (11th Dist.). The court explained R.C. 2921.31(A) requires that the offender act, *id.* at ¶ 13, and the appellant's refusal to respond to the knocking was a failure to act, not an affirmative act, *id.* at ¶ 15. Moreover, his refusal "was, at most, an inconvenience for the officers who had to seek out a key and ultimately consider breaking down the door" before it opened about 15 minutes after the knocking started. *Id.* at ¶ 16.

**{¶23}** This case is distinguishable from *Vitantonio*. Unlike the appellant in *Vitantonio*, Snyder did not merely inconvenience law enforcement by failing to act. As explained above, Snyder made false statements which resulted in a substantial stoppage of Officer Davis's progress, delaying his investigation into the theft and discovery of Snyder's outstanding felony warrants.

## 2. *State v. Grice*

**{¶24}** In *Grice*, the appellate court reversed a conviction for obstructing official business premised on the appellant failing to identify himself and lying about not hearing shots fired. *Grice*, 2009-Ohio-372, at ¶ 6, 16 (1st Dist.). The appellate court explained that the appellant's failure to identify himself could not support the conviction because it was not an affirmative act. *Id.* at ¶ 10. There was also no evidence that the officers' progress was hampered or impeded by the appellant lying about not hearing shots fired. *Id.* at ¶ 14. The appellant testified that he told the officers he had not heard any shots fired, but an officer testified that the appellant made no statement, and that officer's testimony was consistent with the testimony of the other investigating officers. *Id.* at ¶ 4-5. The appellate court found "[t]he officers duly investigated the 'shots fired' report, unaware of [the appellant's] statement. They found a gun, spent casings, and a damaged window, and they determined not only that shots had been fired but also from where they had been fired." *Id.* at ¶ 14. Therefore, "[o]ne could have reasonably concluded only that [the appellant's] statement had not hampered or impeded this part of the investigation in any measurable  way." *Id.* The appellate court found that "[t]he only 'obstructing' that occurred in this case involved the delay in identifying [the appellant]," but the record was "devoid of a nexus between this obstructing and the affirmative act—[the] statement about not hearing shots fired." *Id.* at ¶ 16.

**{¶25}** Snyder suggests this case is like *Grice* because the lie in that case "did not prevent the police from conducting their investigation, locating the gun, spent casings, and a damaged window," and his lies "did not prevent the police from learning the facts surrounding the theft, or gathering evidence." But *Grice* did not hold that R.C. 2921.31(A)

requires proof that the offender prevented police from doing their job. To the contrary, the *Grice* court observed that it "has held that there is no element in R.C. 2921.31(A) requiring the state to prove that the offender's conduct 'prevented' a public official from doing his job." *Id.* at ¶ 12, quoting *Stayton*, 126 Ohio App.3d at 163 (1st Dist. 1998). *Grice* focused on the lack of evidence that the lie in that case created a substantial stoppage of the officers' progress. *See id.* at ¶ 12-16. As we previously explained, there is evidence in this case that Snyder's lies caused a substantial stoppage of Officer Davis's progress.

### 3. *State v. King*

{¶26} In *King*, a Sears cashier saw a female suspected of stealing a diaper bag get into a vehicle which was driven by a male and registered to the appellant. *King*, 2007-Ohio-335, at ¶ 18, 21 (3d Dist.). When questioned by an investigating deputy, the appellant made inconsistent statements about what happened that day. *Id.* at ¶ 60. The deputy testified that the appellant's responses did not lead him to investigate further and that the appellant hampered the investigation by not telling him the identity of the female subject. *Id.* at ¶ 24. The appellant was convicted of obstructing official business, and the appellate court reversed. *Id.* at ¶ 1. The author of the lead opinion could not find the State showed the false statements hampered or impeded the deputy's investigation. *Id.* at ¶ 61. The lead opinion explained that by the time the deputy questioned the appellant, he "had already talked to the Sears employees and obtained their statements, obtained the license plate number of the truck in which the female subject allegedly rode away, viewed the security camera videotape and took it into evidence, and obtained the diaper bag tag found in the area in which the female subject had been." *Id.* The deputy

"acknowledged that the final steps in his investigation, after questioning [the appellant], would have involved finding the female subject and questioning her, and that [the appellant] hampered his investigation by only failing to provide the female subject's name." *Id.* The lead opinion explained that "a person cannot be guilty of obstructing official business by failing to act." *Id.* at ¶ 62.

{¶27} Initially, we observe that the other two panel members in *King* concurred in the judgment but not in the lead opinion's analysis of what constituted adequate evidence of obstructing official business. *Id.* at ¶ 70 (Shaw., J., concurring in judgment only) (Bryant, J. concurred in the separate opinion). In any event, this case is distinguishable from *King.* Like the deputy in *King*, Officer Davis indicated a failure to act impacted the performance of his duties. But as previously explained, Officer Davis's other testimony and body camera footage shows Snyder's lies hampered or impeded Officer Davis in the performance of his lawful duties. Unlike the statements in *King*, Snyder's lies prompted additional investigation into Synder's identity, which delayed Officer Davis in investigating the theft and discovering the felony warrants.

### 4. *State v. Wilson*

{¶28} In *Wilson,* a municipal court found the defendant not guilty of obstructing official business. *Wilson*, 101 Ohio Misc.2d at 47 (M.C. 1999). The defendant was a passenger in a car with three others, and Officer Aaron Burnett started to follow the vehicle to cite the driver for reckless operation. *Id.* at 44-45. "The car suddenly pulled into a residential driveway," and one passenger "ran from the car, jumped a fence, and disappeared." *Id.* at 45. Officer Burnett called for backup. *Id.* He and another officer questioned the three on the scene while backup officers pursued the fleeing passenger.

*Id.* The defendant either denied there was a fourth person in the car or claimed she did not know their identity. *Id.* The court found that "[n]otwithstanding the alleged statements of the defendant, there was never any doubt that there was a fourth passenger or that he had fled. The officers arresting the runner identified him at the hospital; Officer Burnett had located his identity papers contemporaneously with his apprehension." *Id.* at 46. The "defendant's statements, even if false, did not cause 'substantial stoppage of the officer's progress.'" *Id.* at 46. "[T]hey had no effect whatsoever on the police pursuing the runner." *Id.* And they did not hamper or impede Officer Burnett in pursuing his official duties because he "had already seen the runner and called for backup to apprehend him." *Id.*

**{¶29}** This case is distinguishable from *Wilson*. The statement in *Wilson* had no effect on law enforcement; Snyder's lies did. Again, they prompted additional investigation into Synder's identity, which delayed Officer Davis in investigating the theft and discovering the felony warrants.

E.  Conclusion

**{¶30}** After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Snyder did an act that hampered or impeded a public official in the performance of the public official's lawful duties. Thus, we conclude the trial court did not violate Snyder's rights to due process and a fair trial by convicting him of obstructing official business in the absence of sufficient evidence. We overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## __JUDGMENT ENTRY__

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**