JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Rogdric Sinclair ("appellant") appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we affirm in part, reverse in part and remand for a new trial.
 I. {¶ 2} According to the case, a Cuyahoga County grand jury returned a six-count indictment against appellant for the following: count one, aggravated robbery, R.C. 2911.01; counts two and three, assaults on a peace officer, R.C. 2903.13; count four, possession of crack cocaine, R.C. 2925.11; count five, drug trafficking, R.C. 2925.03; and count six, possessing criminal tools, R.C. 2923.24.
 {¶ 3} After a five-day trial, the jury returned a not guilty verdict on count one and guilty verdicts on all remaining counts. The trial court sentenced appellant as follows: 16 months on count two; 16 months on count three; four years on count four; four years on count five; and six months on count six, with counts two, three, and four to run consecutively, and counts five and six to run concurrently with count four, for a total of six years and eight months.
 {¶ 4} According to the facts, on March 21, 2004, across from the Cuyahoga Metropolitan Housing Authority's Garden Valley housing complex, police observed appellant driving an SUV with illegally tinted windows. During the subsequent traffic stop, police observed appellant's nervous behavior, his furtive movements, and noted appellant's lack of a driver's license.
 {¶ 5} Prior to a pat down with appellant standing with his hands up against the rear window of the SUV, police observed an off-white plastic bag protruding from a Snickers candy wrapper in appellant's right hand. When asked to drop the candy wrapper, appellant refused, turned his body, and elbowed the police. He then attempted to flee and fought with the police officers, by flailing his arms, striking officers, and refusing to obey all police commands to stop.
 {¶ 6} During the struggle, the police used arm bars, common perennial strikes to the legs, pepper spray, and finally, fist strikes to the face to subdue the out-of-control appellant. During the melee, appellant had his hand on the gun of police officer Scott Sieger, and the gun ended up in the street. After appellant was handcuffed with the assistance of additional officers, police were finally able to retrieve the candy wrapper, which had to be pried from appellant's hand and which contained more than eight grams of crack cocaine in chunks, with some individually wrapped for sale.
 II. {¶ 7} Appellants' first assignment of error states the following: "The trial court denied Rogdric Sinclair his constitutional right to be present at his trial, when it began the trial at a time when Mr. Sinclair was indisposed and unable to participate in his own trial."
 {¶ 8} Appellants' second assignment of error states the following: "The trial court erred and denied Rogdric Sinclair his constitutional right to a fair trial before a jury, when it failed to give an important instruction to the jury."
 {¶ 9} Appellants' third assignment of error states the following: "Rogdric Sinclair has been deprived of his liberty without due process of law and of his constitutional right to a trial by jury by the maximum sentence imposed on him, for the reason that a jury did not find the facts which supported the imposition of a maximum sentence."
 {¶ 10} Appellant's fourth assignment of error states the following: "Rogdric Sinclair has been deprived of his liberty without due process of law by the consecutive sentence imposed on him as said sentence does not comport with Ohio's new sentencing structure."
 III. {¶ 11} Appellant argues in his first assignment of error that the trial court erred because it began the trial at a time when appellant was mentally indisposed and therefore unable to participate. Appellant argues that he ingested a large amount of antidepression medication which resulted in his incapacitation.
 {¶ 12} Both the Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution guarantee a criminal defendant the right to be present physically during every important stage of his trial. In addition, the Sixth Amendment guarantee is made applicable to the states by the Fourteenth Amendment to the United States Constitution. Illinois v. Allen (1970), 397 U.S. 337, 338. Ohio has codified the constitutional right to be present at every material stage of a trial in Crim.R. 43(A):
"The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the verdict. A corporation may appear by counsel for all purposes."
(Emphasis added.)
 {¶ 13} Neither a trial, nor any part thereof, may be held, when the defendant is absent from the proceedings. State v. Meade (1997),80 Ohio St.3d 419; State v. Kirkland (1984) 18 Ohio App.3d 1. See, also, United States v. Aikpo (C.A. 5, 1991), 944 F.2d 206 (holding the right to be present was violated when the trial court conducted jury voir dire without the defendant being present).
 {¶ 14} In the case sub judice, appellant had taken an overdose of the antidepression medication Elavil. The overdose of Elavil left appellant so drowsy and incapacitated that although he was physically present at trial, he was unable to assist in the selection of the jury in any meaningful manner. Before the trial began, appellant's defense counsel notified the court that appellant was under psychiatric care and was taking Elavil.[1]
 {¶ 15} Appellant's counsel also informed the court that he believed appellant's state of mind was such that appellant should not be going to trial, as he was not making clear decisions. The next day, August 3, 2004, the trial court noted on the record that appellant would not come up for trial. Trial counsel informed the court that appellant was taking Elavil and that his family had called the county jail the night before about appellant's conviction. Appellant was to see a psychiatrist either that morning or afternoon.
 {¶ 16} Counsel also informed the court that appellant's state of mind was such that he could not proceed with the trial that morning, because of the medication. A deputy sheriff informed the court that appellant had been placed on suicide watch because he had taken an overdose of his prescription medication on the previous night. On August 4, 2004, defense counsel filed a motion with the court stating that appellant had displayed a lack of understanding and awareness, which was serious and obvious and had been brought to the court's attention.
 {¶ 17} The trial court did eventually order appellant's medical records. The medical records in question are found in the trial file, which was transferred to this court and are part of the record. These medical records indicate that on August 3, 2004, appellant was showing bizarre and inexplicable behavior and that he had "voiced suicidal thoughts."
 {¶ 18} The records also demonstrate that appellant stated he had hoarded his Elavil, had taken an overdose, and was placed on supervised watch. Finally, the medical records state that appellant's sister called expressing concern that appellant had attempted suicide. The correction officers checked appellant's jail cell and found a juice cup with a layer of sediment on the bottom. Appellant admitted the sediment layer was from the Elavil pills.
 {¶ 19} The suicide watch, appellant's bizarre behavior, and other evidence in the record demonstrate error. Given the evidence in this particular case, the trial court should have conducted a more thorough investigation into appellant's mental state. Moreover, the court's failure to grant even a one-day continuance demonstrates an additional lack of prudence on the part of the trial court.
 {¶ 20} Based on the evidence presented in the record, we find error on the part of the trial court. Accordingly, appellant's first assignment of error is sustained.
 IV. {¶ 21} Appellant argues in his second assignment of error that the trial court erred by not including a proposed jury instruction regarding a citizen's right to resist an unlawful arrest.
 {¶ 22} A reviewing court must utilize an abuse of discretion standard in determining whether the trial court erred in refusing to read an appellant's proposed instruction. State v. Goff, 82 Ohio St.3d 123. A defective jury instruction does not rise to the level of plain error unless it can be shown the outcome of the trial would clearly have been different but for the alleged error. State v. Campbell (1994),69 Ohio St.3d 38; Cleveland v. Buckley (1990), 67 Ohio App.3d 799. Moreover, a single challenged jury instruction may not be reviewed piecemeal or in isolation but must be reviewed within the context of the entire charge. See State v. Hardy (1971), 28 Ohio St.2d 89.
 {¶ 23} "In a criminal case, if requested special instructions to the jury are correct, pertinent, and timely presented, they must be included, at least in substance, in the general charge." State v. Guster
(1981), 66 Ohio St.2d 266. An instruction on self-defense is only proper where the arrest has been unlawful. State v. Lorenzo, Lake App. No. 2001-L-053, 2002-Ohio-3524.
 {¶ 24} The police in the case at bar had probable cause to arrest appellant for driving without a license, having an open container of alcohol in the vehicle, or possessing crack cocaine. Thus, as the underlying arrest was lawful, the trial court properly refused a jury instruction on either the right to resist an unlawful arrest or on self-defense. Accordingly, appellant's second assignment of error is overruled.
 {¶ 25} We find appellant's third and fourth assignments of error to be without merit. Appellant's argument that his maximum sentence violates the United States Supreme Court's decision in Blakely v. Washington[2]
has been addressed in this court's en banc decision of State v. Lett.[3]
In Lett, we held that R.C. 2929.14(C) and (E), which govern the imposition of maximum and consecutive sentences, do not implicate the Sixth
Amendment as construed in Blakely. Accordingly, in conformity with that opinion, we reject appellant's contentions.
 {¶ 26} Moreover, we find that in the instant case, the trial court properly followed the statutory mandate of R.C. 2929.14(E)(4) to impose consecutive sentences for multiple offenses by finding that the appellant's sentence was (1) necessary to protect the public from future crime as well as to punish the offender and (2) that consecutive sentences are necessary for the danger the offender poses to the public.[4] The trial court based its findings on detailed reasons found on the record.[5]
 {¶ 27} Accordingly, appellant's third and fourth assignments of error are overruled.
Judgment affirmed in part, reversed in part, and remanded for a new trial.
This cause is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
It is ordered that appellant and appellee equally share the cost of this proceeding.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Patricia Ann Blackmon, A.J., and Frank D. Celebrezze, Jr., J.,concur.
[1] Tr. 12.
[2] Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531.
[3] State v. Lett, Cuyahoga App. Nos. 84707 and 84729, 2005-Ohio-2665.
[4] Tr. 806.
[5] Tr. 806-814.