JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Andrew Szewczyk ("Szewczyk"), appeals his conviction. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Szewczyk was charged with disorderly conduct, resisting arrest, and obstructing official business. The matter proceeded to a bench trial at which the following evidence was presented.
 {¶ 3} Szewczyk was drinking at a bar with his girlfriend, Jennifer Pierce ("Pierce"). The couple became acquainted with an unnamed "barmaid" and agreed to drive her to another bar after her shift. Pierce, Szewczyk, and the barmaid drove to the Islander Bar in Middleburg Heights and continued drinking. While at the Islander, Szewczyk and Pierce began arguing, allegedly because Szewczyk wanted to go home. The couple testified that the unnamed barmaid poured her drink on Szewczyk during the argument. The Islander's bartenders ordered Szewczyk to leave the bar. The argument continued outside and Szewczyk struggled with Pierce over her purse. She tripped and fell on the concrete, striking her head. Several bystanders chased Szewczyk, and a fight ensued.
 {¶ 4} Middleburg Heights police officers, Paul Meyerholtz, Randy Cowie, and Eric Burgett, arrived on the scene. The officers testified that Pierce told them that Szewczyk had struck her in the back of the head, but she did not want to press charges. Pierce testified that she never told the officers that her boyfriend had hit her. *Page 4 
 {¶ 5} One of the officers asked Szewczyk for his identification. Szewczyk, who appeared intoxicated, complied but then told police, "Bye, f*** you guys later." The police decided to let Szewczyk go, and the unnamed barmaid offered to drive the couple home in Pierce's car. The three left the scene but returned a few minutes later. The barmaid approached the remaining officer at the scene, and informed him that Szewczyk was attacking Pierce in the car. The officer radioed the other officers to return to the scene.
 {¶ 6} The situation continued to escalate with Pierce and Szewczyk yelling at each other. Pierce was holding her cell phone when Szewczyk lunged at her, grabbed her arm, spun her around, and pulled her toward him. The officers then decided to arrest Szewczyk for disorderly conduct. Officer Cowie approached Szewczyk and informed him that he was under arrest. The officer testified that as he reached for Szewczyk's arm, the intoxicated man swung his arm around and pushed the officer into the glass window of a convenience store.
 {¶ 7} It took four officers to subdue Szewczyk. Szewczyk testified that one of the officers tasered him. The officers all testified that their department had not issued stun guns, so it would have been impossible for them to have used one on Szewczyk. Once on the ground, Szewczyk continued to struggle with the officers. As they escorted him to a patrol car, Szewczyk spat tobacco at two of the officers. Once inside the patrol car, Szewczyk repeatedly kicked at the car windows, so the police had to place additional restraints on him. *Page 5 
 {¶ 8} During the ride to the station, Szewczyk continued to be uncooperative and repeatedly threatened the officers with physical harm. The officers testified that when they arrived at the police station, the decision was made not to immediately process Szewczyk because he continued to threaten the officers if they took off the handcuffs.
 {¶ 9} Pierce testified for the defense and blamed the incident on the unnamed barmaid, who Pierce claimed provoked her boyfriend. She admitted Szewczyk was intoxicated that night, but denied that he hit her and also claimed he did not push Officer Cowie. She further claimed that the police attacked her boyfriend. Szewczyk testified in his own defense. He also blamed the situation on the unnamed barmaid. He denied striking Pierce inside the bar and maintained that the police attacked him. He admitted that he pulled his arm away from Officer Cowie when the officer tried to grab him. He also admitted that he "resisted arrest" after the officers took him to the ground. He testified that he resisted arrest because he had not done anything wrong.
 {¶ 10} The trial court convicted Szewczyk of all counts and sentenced him to a total of sixty days in jail with house arrest available after serving fifteen days in jail, one year on probation, and fines. His sentence was stayed pending appeal.
 Sufficiency and Manifest Weight of the Evidence {¶ 11} Szewczyk sets forth eight assignments of error for our review. In the first and second assignments of error, he argues that his conviction for disorderly *Page 6 
conduct was not supported by sufficient evidence and was against the manifest weight of the evidence. Although they involve different standards of review, these assignments of error will be discussed together because they involve the same evidence.
 {¶ 12} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 13} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins. As the Ohio Supreme Court stated:
 "Weight of the evidence concerns the `inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the *Page 7 
issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 14} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we observed that the reviewing court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814. This standard does not change in those instances when a trial court serves as the trier of fact.
 {¶ 15} Szewczyk was charged with disorderly conduct in violation of R.C. 2917.11(B)(2), which states in pertinent part, "[n]o person, while voluntarily *Page 8 
intoxicated, shall * * * [e]ngage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another."
 {¶ 16} Szewczyk does not dispute that he was voluntarily intoxicated. Instead, he argues that the City failed to prove that he engaged in conduct or created a condition that presented a risk of physical harm to anyone. We disagree.
 {¶ 17} Szewczyk concedes he was arguing with Pierce. The officers testified that Pierce told them that Szewczyk struck her. Even after the officers initially let Szewczyk go, the barmaid drove the couple back to the scene and claimed that Szewczyk was attacking Pierce in the car. As the officers were attempting to investigate further, Szewczyk lunged at Pierce, and the officers testified that they feared he was going to hurt her.
 {¶ 18} Szewczyk basically claims that the three officers lied while testifying and he and Pierce told the trial court "what really happened." Determining the credibility of the witnesses, however, is within the province of the initial fact-finder, not the reviewing court. The trial judge who served as the finder of fact in this case determined that the three officers were more credible than Szewczyk and Pierce. Even though there were a few insignificant inconsistencies in the officers' testimony, these minor inconsistencies do not lead to the conclusion that there was insufficient evidence to support Szewczyk's conviction or that his conviction was against the manifest weight of the evidence.
 {¶ 19} Therefore, the first and second assignments of error are overruled. *Page 9 
 Obstructing Official Business {¶ 20} In his third through fifth assignments of error, Szewczyk challenges his convictions for obstructing official business.
 {¶ 21} Szewczyk was convicted of obstructing official business in violation of R.C. 2921.31(A), which states that "no person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 22} Within these assignments of error, Szewczyk argues that the officers were not performing "lawful duties" because they arrested him for no reason; that even if the arrest was lawful, he did not "perform an act" which he intended to prevent the officers from performing their duties; and that he was privileged to resist because the officers used excessive force.
 {¶ 23} We find no merit to Szewczyk's arguments. Obstructing official business, in violation of R.C. 2921.31, is established where there is both an illegal act which quickens the duty of the police officer to enforce the law, and interference with intent to impede that enforcement. Warrensville Hts. v. Wason (1976), 50 Ohio App.2d 21, 25,361 N.E.2d 546; State v. Williams, Cuyahoga App. No. 83574,2004-Ohio-4476. *Page 10 
 {¶ 24} "Privilege" in the context of R.C. 2921.31 refers to a positive grant of authority entitling one to deliberately obstruct or interfere with a police officer performing his lawful duty. Williams, citingState v. Stayton (1998), 126 Ohio App.3d 158, 163, 709 N.E.2d 1224. The burden of proof is on the defendant to establish a privilege. SeeWilliams, citing State v. Foster (Sept. 17, 1997), Seneca App. No. 13-97-09, 1997 Ohio App. LEXIS 4280.
 {¶ 25} As stated above, the police attempted to place Szewczyk under arrest for disorderly conduct. Szewczyk thwarted the efforts of the police by pushing Officer Cowie and kicking the windows of the police car, necessitating additional restraints. Additionally, Szewczyk repeatedly threatened the officers, telling them that he would assault them if they uncuffed him, so the officers delayed processing him at the jail. Although Szewczyk argues that he was privileged to act as he did, he has failed to identify and establish any privilege that would entitle him to deliberately obstruct or interfere with the police officers who were attempting to effectuate a lawful arrest.
 {¶ 26} Therefore, the third, fourth, and fifth assignments of error are overruled.
 Resisting Arrest {¶ 27} In the sixth through eighth assignments of error, Szewczyk challenges his conviction for resisting arrest. *Page 11 
 {¶ 28} Szewczyk was convicted of a violation of R.C. 2921.33, which states in part that "no person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." R.C.2921.33(A).
 {¶ 29} Szewczyk argues that he did not know he was under arrest when he resisted and his arrest was unlawful. Officer Cowie testified, however, that he verbally informed Szewczyk that he was placing him under arrest for disorderly conduct and that is when Szewczyk started resisting. Although Szewczyk testified that the officers never told him that they were arresting him, it was within the province of the trial court to decide the credibility of the witnesses. We also find no evidence that Szewczyk's arrest was unlawful. Even if we determined that his arrest was unlawful, it is well established that:
 {¶ 30} "In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." Columbus v. Fraley (1975),41 Ohio St.2d 173, 324 N.E.2d 735, paragraph three of the syllabus.
 {¶ 31} A review of the evidence does not show that Szewczyk was privileged to resist his arrest because of excessive or unnecessary force by the police. Instead, the evidence shows that Szewczyk himself was the cause of the force used in his arrest. He admitted that he kept pulling his arm away from Officer Cowie as the officer tried to place him under arrest and struggled with the four officers as they *Page 12 
attempted to handcuff him. Most importantly, we find that Szewczyk, by his own admission, established that he resisted arrest.
 {¶ 32} Therefore, the sixth, seventh, and eighth assignments of error are overruled.
 {¶ 33} Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and MELODY J. STEWART, J., CONCUR. *Page 1