[Cite as *State v. Elko*, 2020-Ohio-4466.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,           :

                                     No. 109082

    v.                            :

CHRISTIE ELKO,                           :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 17, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-623861-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

The Pattakos Law Firm L.L.C., Peter Pattakos, and Rachel Hazelet, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1}   A jury acquitted defendant-appellant Christie Elko ("Elko") of assaulting a police officer, R.C. 2903.13(A), a fourth-degree felony, but found Elko

guilty of resisting arrest, R.C. 2921.33(A), a second-degree misdemeanor. Elko was sentenced to time served.

{¶ 2} Elko appeals the conviction. We reverse the conviction and remand.

## I. Background and Facts

{¶ 3} On September 24, 2016, Elko was arrested by Sergeant Floyd Takacs ("Sgt. Takacs") and Officer Daniel Daugherty ("Officer Daugherty") of the Olmsted Falls Police Department who responded to a dispatch report of a domestic violence complaint lodged by Elko's then-boyfriend Aaron Watkins ("Watkins"). The state asserts that Elko resisted arrest and assaulted Sgt. Takacs. Elko counters that the officers were aggressive and used excessive force to effect the arrest.

{¶ 4} On October 18, 2016, Elko was indicted in Cuyahoga C.P. No. CR-16-610322 for assault under R.C. 2903.13(A). The indictment names Watkins as the victim yet contains a "furthermore" clause that describes the victim as a peace officer. Watkins is not a peace officer.

{¶ 5} On December 19, 2017, Elko was indicted in *State v. Elko*, Cuyahoga C.P. No. CR-17-623861 for assault of peace officer Takacs under R.C. 2903.13(A), with the added charge of resisting arrest under R.C. 2921.33(A). The indictment provides that Elko "did recklessly or by force, resist or interfere with a lawful arrest

of herself or another." Journal entry No. 101839805 (Dec. 12, 2017). The original indictment was dismissed in January 2018.[1]

{¶ 6} On February 5, 2018, Elko pleaded no contest to resisting arrest and the assault charge was nolled. On June 21, 2018, Elko moved to withdraw her plea under Crim.R. 32.1 on the ground that the state withheld exculpatory evidence from the arresting officer's disciplinary file.[2] The motion was granted on July 16, 2018.

{¶ 7} Trial commenced on September 3, 2019. Elko testified that in the early afternoon of September 24, 2016, Elko was helping in the kitchen of the bar owned by Elko's friends that was located below Elko's apartment. Watkins, who was married to Elko by the time of trial, was also at the bar drinking alcohol and watching football. Elko's 13-year-old daughter arrived to spend time with Elko and meet Watkins for the first time. The three went upstairs to Elko's apartment where Elko and Watkins argued about Watkins's excessive alcohol consumption. Elko testified that Watkins "got really mad," "threw a fit," and "stomped down the stairs" because Elko would not allow Watkins to drive her car to a party. (Tr. 380-381.)

---

[1] In the Berea Municipal Court, Elko was charged with domestic violence against Watkins under R.C. 2919.25 and resisting arrest under R.C. 2921.33. The resisting arrest charge was transferred to the Cuyahoga County Common Pleas Court as part of the two-count indictment in *State v. Elko*, Cuyahoga C.P. No. CR-17-623861 indicted on December 19, 2017. In the municipal case, Elko pleaded no contest to, and was found guilty of, the amended charge of disorderly conduct under Olmsted Falls Ordinances 648.04(A).

[2] Elko alleged that she received the information during discovery in a federal action that Elko filed against the officers and city in 2017 for violating Elko's civil rights under 42 U.S.C. 1983.

**{¶ 8}** Shortly after Watkins departed, Elko and her daughter exited the apartment to walk down the street to a delicatessen. Elko described the events that subsequently transpired that were partially depicted in the dashcam recording of Sgt. Takacs's police car. Elko opines that Sgt. Takacs parked the police car shortly before reaching the alley so the events would not be recorded.

**{¶ 9}** Sgt. Takacs exited the police car, approached Elko and Elko's daughter who had not yet totally emerged from the apartment unit's driveway[3] and told Elko that he "needed to know * * * who I was." (Tr. 384.) "I told him I was Christie, and I lived up — I lived upstairs because we were right next to the apartment I lived in." *Id.*

> I was scared. I had my daughter with me. She was behind me. I made sure to keep her behind me while I was speaking with him at — he came up very aggressively, because he was very close to my face. And just — he kept repeating after I already told him, so that was odd to me, too.

(Tr. 385.)

**{¶ 10}** Elko said that Sgt. Takacs stood "really close to [Elko's] face" and after Sgt. Takacs asked for her name two or three times, Elko asked "[w]hy the f**k are you being so nasty?" (Tr. 436.) Elko also exclaimed, "this is a f**king mistake." (Tr. 419.) Elko stated that she was referring to Sgt. Takacs "put[ting] his hands on me." (Tr. 419.)

> Counsel: When did he hurt you? Did he hurt you right here in the alley?

---

[3] The driveway is interchangeably referenced as the alley during the testimony.

Elko: Yes. I had his fingerprints and bruises all the way down my arm. He held me so hard, it was — he was trying to like squeeze through me.

(Tr. 420.)

{¶ 11} Elko, who possesses an associate degree in criminal justice and was working on a bachelor's degree in the field at the time of trial, said that she focused on moving in front of the dashboard cam to record the event:

I backed away. I have always been taught to get in front of a dashboard cam. And I honestly had no idea about the body cams. So my biggest thing was I'm going to have to get him in front of this dashboard cam because I know — I know he's going to hurt me, I know he's going to harm me at this point.

(Tr. 386.) Elko stated she was afraid of the officer and wanted to protect her daughter.

{¶ 12} Elements of the exchange in the alley can be heard on Sgt. Takacs's dash cam exhibit and viewed as the parties move into dash cam range. The video depicts Elko backing out of the alley into view of the dash cam repeating the phrase "don't you f**king touch me." (Tr. 363-364.) "What the f**k is wrong with you?" (Tr. 364-365.) Elko continues to back away from Sgt. Takacs who proceeds toward her. The video shows Sgt. Takacs grabbing at Elko and Sgt. Takacs advising Elko that she is under arrest.

{¶ 13} Officer Daugherty arrives and tells Elko to get on the ground or he will tase her. Sgt. Takacs and Officer Daugherty maneuver Elko face down on the asphalt. Officer Daugherty holds a taser against Elko's body, but Officer Daugherty stated the taser was not activated. Sgt. Takacs testified that Elko's actions

constituted force and "necessitated" the officers' responses as well as caused Sgt. Takacs to scrape his knee when taking Elko to the ground. Elko's "actions necessitated my actions, which resulted in my injury" which constituted the assault. (Tr. 338.) Elko also bumped the officers with her shoulders during the six-second "scuffle," which also constituted the assault. (Tr. 339.)

{¶ 14} The officers testified that they had to push and pull Elko to have her enter the car. Elko denied that she resisted entering the police car. A tall individual who was wearing a dress at the time, Elko testified that the officers' attempts to push her into the car caused her back and shoulder to impact the door frame. Elko was "smashed against the car" while the officers were pushing, pulling, hitting and punching. ( Tr. 429.) "I even told them, I was like, '[g]ive me a second so I can sit down.'" (Tr. 430.) "And the reason that the car looks like it's smashed against my arm is because they are pushing on my upper half." (Tr. 431.)

{¶ 15} Elko opined that the officers kept their hands on her and wanted to hurt her the entire time. The video evidence demonstrates that Elko said, when being placed into the police car, "'You attacked me in the alley, you old f**k.'" (Tr. 340, quoting video.) Elko then stated, "'I didn't touch you.'" *Id.*, quoting video.

{¶ 16} Elko later learned that Watkins had contacted the police and accused Elko of domestic violence. The police dispatcher testified regarding the dispatch recording. The dispatcher did not ask Watkins for Elko's name and Watkins did not advise the dispatcher that Elko had a weapon or was under the influence of alcohol.

Watkins did not indicate to the dispatcher that Elko was dangerous other than to say that "she hurt him." (Tr. 179.)

{¶ 17} Officer Daugherty testified that he responded to the domestic violence call with lights and siren, dash cam and wearing a body cam. Watkins was standing outside of the bar and flagged down Officer Daugherty. Sgt. Takacs arrived, saw Watkins point toward the alley adjacent to the bar and drive forward to the area. Officer Daugherty was still speaking with Watkins when he "heard when Sgt. Takacs had made an encounter, there was a lot of screaming and yelling." (Tr. 201.) Officer Daugherty could not recall whether the dispatcher identified Elko by name.

{¶ 18} Without knowledge of Elko's identity, Sgt. Takacs approached Elko and said, "I need to know who you are." (Tr. 293.) Sgt. Takacs confirmed that Elko identified herself as Christie who lives in the apartment above the bar, and that Elko asked Sgt. Takacs why he was being so nasty with her.

{¶ 19} Sgt. Takacs did not tell Elko that she was under arrest at that time but testified and documented in the police report that he did not grab Elko's arm until after Elko was placed under arrest. Officer Daugherty testified that, as he ran toward the encounter, he observed Sgt. Takacs "trying to grab" Elko who was "[p]ulling away from" Sgt. Takacs. (Tr. 304-305.) Officer Daugherty described Elko's actions as a use of force.

{¶ 20} Officer Daugherty added "[w]e grabbed Miss Elko, and she was resisting after Sgt. Takacs had told her she's under arrest, and we ended up having to take her to the ground to get control of her." (Tr. 205.) "She was pushing and

pulling away from us as we're trying to put handcuffs on her." *Id.* "She had to be taken to the ground" to put the handcuffs on. *Id.* Elko "was actively resisting getting into the back of the patrol unit." (Tr. 206.) Officer Daugherty "had to go * * * to the passenger's side" of the car "to pull" Elko into the car while Sgt. Takacs pushed. *Id.*

{¶ 21} Officer Daugherty also indicated that he responded with force during the arrest. "I ended up grabbing one of her arms, and we took her to the ground. I also then pulled my taser out, and I placed it on her back, but it was never activated." (Tr. 207.) Officer Daugherty did not believe excessive force was used against Elko.

{¶ 22} Officer Daugherty confirmed that his dash cam video depicted Elko and Sgt. Takacs by the alley but that Officer Daugherty actually "did not see what happened in the alley." (Tr. 225.) According to the police report prepared by Officer Daugherty and Sgt. Takacs, Officer Daugherty heard Elko yelling at Sgt. Takacs, saw Sgt. Takacs attempt to detain Elko who became violent by pulling away when Sgt. Takacs tried to grab Elko's arm. Per Officer Daugherty, and as the video exhibits confirm, after Elko pulled away and began backing into the street, she threw her purse and keys on the ground and Sgt. Takacs informed Elko that she was under arrest.

{¶ 23} The body cam provides additional insight into Elko's entry into the police cruiser. Elko, wearing a dress with her hands cuffed behind her back, can be heard telling the officers "'I'm going to get in the car if you'd stop pushing me.'" (Tr. 235, quoting body cam.)

{¶ 24} Sgt. Takacs testified that, after Elko provided her first name in response to his request for identification, Elko started to walk away from Sgt. Takacs.

> I finally had to put my hand on her to stop her from walking away from me. And she immediately became angry and changed directions and turned and started walking sort of backwards at me * * * and I was following her, and she was pretty much in an angry state.

(Tr. 255-256.) Elko continued to walk away so he said "'[y]ou're under arrest.'" (Tr. 256.) Elko was not under arrest for domestic violence but for "failure to identify," a "fourth degree" misdemeanor and "an arrestable offense." (Tr. 257.) Sgt. Takacs said Elko had to be taken "to the ground to get the handcuffs on her, which she resisted to do." (Tr. 257.) "We were being as, you know, gentle as we could under the situation." Elko continued to resist. "We took her to the vehicle, pretty much had to carry her there, and then she wouldn't get in the car itself." (Tr. 258.)

{¶ 25} Elko responded to Sgt. Takacs's request for identification with her first name. Sgt. Takacs placed his hands onto Elko because Elko was not responsive. Confirmed during the video testimony, the dash cam indicates that the contact occurred within five seconds of Sgt. Takacs's approach. (Tr. 288.) Sgt. Takacs also indicated in the police report that Elko struggled and resisted the officers who finally were able to bring her to the ground. Elko was placed face down on the cement with an officer's knee in her back. Sgt. Takacs also admitted to calling Elko a "stupid fucking b**ch." (Tr. 331.)

**{¶ 26}** Sgt. Takacs explained that both parties were excited and emotional. However, Sgt. Takacs said that Elko's "actions necessitated my actions, which resulted in" Sgt. Takacs's scraped knee. (Tr. 338.)

**{¶ 27}** The jury determined that Elko did not assault Sgt. Takacs but that she did resist arrest.

## II. Assigned Error and Analysis

**{¶ 28}** Elko assigns as error the trial court's failure to instruct the jury that an officer's use of force provided a complete defense to the charge of resisting arrest. Elko presents as the underlying issue:

> Under Ohio law, the arresting officer's use of excessive force is a complete defense to a charge of resisting arrest, even if the underlying arrest was lawful. Here, evidence was presented at trial sufficient to support a finding that the arresting officer used excessive force in making the arrest at issue. Did the trial court err in refusing to instruct the jury on the excessive force defense?

Appellant's brief, p. 1. We find that the argument has merit and reverse the conviction.

**{¶ 29}** A trial court must "[w]hen instructing the jury, * * * provide 'a plain, distinct, and unambiguous statement of the law applicable to the evidence.'" *State v. Torres*, 8th Dist. Cuyahoga No. 99596, 2013-Ohio-5030, ¶ 50, quoting *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 73, citing *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985).

> "A jury instruction is proper where '1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury.'"

*Id.*, quoting *State v. Walker*, 8th Dist. Cuyahoga No. 97648, 2012-Ohio-4274, ¶ 53, quoting *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 15 (11th Dist.). *See also State v. Sims*, 8th Dist. Cuyahoga No. 85608, 2005-Ohio-5846, ¶ 17 (failure to instruct jury on deadly force self-defense instruction was prejudicial).

{¶ 30} A trial court has broad discretion to determine whether the trial evidence "'was sufficient to warrant a jury instruction.'" *Torres* at ¶ 51, quoting *State v. Mitts*, 81 Ohio St.3d 223, 228, 1998-Ohio-635, 690 N.E.2d 522. We review a trial court's refusal to give a requested jury instruction for an abuse of discretion based on the circumstances and facts of the case. *Id.*, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

{¶ 31} An "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). An "'[a]buse of discretion' has been described as a ruling that lacks a 'sound reasoning process.'" *Torres* at ¶ 51, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 32} R.C. 2921.33(A) provides that "[n]o person, reckless or by force, shall resist or interfere with a lawful arrest of the person or another." Elko argues that the trial court was required to instruct the jury that Elko was entitled to reasonably resist the officers' unlawful excessive force even if the underlying arrest was lawful.

{¶ 33} The state responds that the instruction was not required under the facts of this case:

> It is black letter law that self-defense is an affirmative defense in the context of resisting arrest and one may only claim such a defense if that person admits to committing the elements of the offense and used force to defend him or herself as a justification to having committed the offense.

Appellee's brief, p. 16.

{¶ 34} Thus, the state posits that Elko was not entitled to the instruction because (1) the police had probable cause to arrest Elko for domestic violence and failure to identify herself before the police put their hands on her; (2) the police used reasonable force; and (3) Elko "denied" that she "committed the offenses which effectively precluded" Elko "from also proffering an affirmative defense." In support of the latter point, the state emphasizes that when Elko was asked "did you recklessly or by force resist or interfere with a lawful arrest of yourself?" (Tr. 399.) Elko responded, "No, I did not." *Id.* "[State:] So you're denying that you did anything of those things?" (Tr. 400.) "[Elko:] 100 percent." *Id.*

{¶ 35} The state relies on this court's decision in *State v. Sinclair*, 8th Dist. Cuyahoga No. 85235, 2005-Ohio-6011, that cites *State v. Lorenzo*, 11th Dist. Lake No. 2001-L-053, 2002-Ohio-3495, for the premise that "[a]n instruction on self-defense is only proper where the arrest has been unlawful." *Id., citing id.*

{¶ 36} Sinclair was stopped by police for illegally tinted windows, appeared nervous, engaged in furtive movements and did not have a driver's license. During the pat-down, police observed suspected contraband. Sinclair attempted to flee,

flailed his arms, "striking officers" and refused the police orders to stop. At one point, Sinclair allegedly had his hand on the gun of an officer. *Id.* at ¶ 5-6. Officers discovered an open container of alcohol and crack cocaine.

{¶ 37} Sinclair requested a jury instruction on unlawful arrest or self-defense. We determined:

> The police in the case at bar had probable cause to arrest appellant for driving without a license, having an open container of alcohol in the vehicle, or possessing crack cocaine. Thus, as the underlying arrest was lawful, the trial court properly refused a jury instruction on either the right to resist an unlawful arrest or on self-defense.

*Id.* at ¶ 24.

{¶ 38} Lorenzo was convicted of assaulting a police officer. *Lorenzo*, 11th Dist. Lake No. 2001-L-053, 2002-Ohio-3495, ¶ 1. Police were called to intervene in an altercation between Lorenzo and Lorenzo's father. *Id.* at ¶ 1. An officer arrived at the scene and warned Lorenzo to calm down or he would be arrested. Lorenzo pulled away from the officer when the officer attempted to apply handcuffs, was eventually pepper sprayed yet knocked the officer's glasses off and caused a cut to the officer's eyebrow. Another officer arrived and assisted with completing the arrest. *Id.* at ¶ 4-6.

{¶ 39} Lorenzo appealed the finding of guilt. The appellate court rejected Lorenzo's claim that the trial court's refusal to instruct the jury on self-defense and Lorenzo's right to resist an unlawful arrest constituted error.

> An instruction on self-defense is only proper where the arrest has been unlawful. Thus, as the underlying arrest was lawful, a jury instruction

on either the right to resist an unlawful arrest or on self-defense was properly refused by the trial court.

*Id.* at ¶ 41.

{¶ 40} The state offers that Elko's admission that she did not use force, an element of resisting arrest, negates Elko's right to claim the affirmative defense that her actions were reasonable. We disagree. First, we do not find that Elko's subjective response to whether she used force is determinative of whether force as an element of the charge of resisting arrest had been demonstrated. Secondly, we agree with Elko's position that "resisting arrest and resisting an officer's use of excessive force in making an arrest are two different things." Appellant's reply brief, p. 2.

{¶ 41} As the parties agree, our determination is fact specific. *Torres*, 8th Dist. Cuyahoga No. 99596, 2013-Ohio-5030, at ¶ 51. Elko argues that whether the arrest was lawful or unlawful is irrelevant. Our decision in *Middleburg Hts. v. Szewczyk*, 8th Dist. Cuyahoga No. 89930, 2008-Ohio-2043, provides enlightenment.

{¶ 42} Police were summoned to a bar where Szewczyk and his girlfriend were drinking. An altercation ensued and police were summoned. Szewczyk lunged at the girlfriend in front of police and was informed he was under arrest. An officer grabbed Szewczyk's arm who pushed the officer into a glass window. Four officers subdued him. Szewczyk struggled with the officers, "spat tobacco" at them, kicked the patrol car windows, and threatened the officers with physical harm. *Id.* at ¶ 7-8.

Szewczyk was convicted of disorderly conduct, resisting arrest, and obstructing official business.

{¶ 43} Szewczyk argued that his arrest was unlawful and that he was not aware that he was under arrest. This court did not find that the arrest was unlawful. However, pertinent to the instant case,

> [e]ven if we determined that his arrest was unlawful, it is well established that:
>
> "*In the absence of excessive or unnecessary force by an arresting officer*, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), paragraph three of the syllabus.

*Szewczyk*, 8th Dist. Cuyahoga No. 89930, 2008-Ohio-2043, ¶ 29-30.

{¶ 44} In *D'Amato v. Kazimer*, N.D.Ohio No. 1:18-CV-00680, 2020 U.S. Dist. LEXIS 48396 (Mar. 20, 2020), the court considered whether D'Amato's claim that the police used excessive force and violated D'Amato's civil rights under 42 U.S.C. 1983 was barred by D'Amato's guilty plea to resisting arrest. *Id.* at *9-10.

{¶ 45} The court explained:

> Under Ohio law, "a lawful arrest is a necessary element of a conviction for resisting arrest." *Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The Sixth Circuit has suggested that *a lawful arrest cannot occur if the arresting officer has used excessive force. White v. Ebie*, No. 98-3958, 1999 U.S. App. LEXIS 23755, 1999 WL 775914, at *1 (6th Cir. Sept. 24, 1999) ("An arrest is not lawful, under Ohio law, if the arresting officer used excessive force."). Accordingly, in certain circumstances, courts have found that an excessive force claim "attack[s] an essential element of the resisting arrest offense, i.e., the lawfulness of the arrest," and is thus barred by *Heck v. Humphrey*, 512 U.S. 477, 486-487, 129 L.Ed.2d 383, 114 S.

Ct.2364 (1994). *Ebie*, 1999 U.S. App. LEXIS 23755, [WL] at *1; *see also Swiecicki*, 463 F.3d at 494.

In addition, Ohio courts have held that an officer's use of excessive force is an affirmative defense that a criminal defendant may raise in response to a charge of resisting arrest. *E.g., Mansfield v. Studer,* 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840 ("[E]xcessive force is an affirmative defense to resisting arrest."). Specifically, the Sixth Circuit has determined that "*pre-arrest* excessive force is an affirmative defense to a charge of resisting arrest in Ohio." *Hayward v. Cleveland Clinic Found.*, 759 F.3d at 613, 2014 U.S. App. LEXIS 13802 (emphasis added). "Therefore, a criminal conviction for resisting arrest in Ohio cannot stand where a criminal defendant successfully asserts the affirmative defense of pre-arrest excessive force.

(Emphasis added.) *D'Amato v. Kazimer*, N.D.Ohio No. 1:18-CV-00680, 2020 U.S. Dist. LEXIS 48396, at *11-12 (Mar. 20, 2020).

{¶ 46} In this case, Elko requested the instruction on the ground that the officers' use of excessive force rendered the arrest unlawful. Both sides testified that Sgt. Takacs grabbed Elko's arm, Officer Daugherty and Sgt. Takacs took Elko to the ground, face down, to handcuff her, and pushed and pulled Elko into the police car. Body and dash cam footage were not available to record the encounter from its inception due to the placement of Sgt. Takacs's vehicle and malfunctioning body cam. Both parties testified that Sgt. Takacs grabbed Elko's arm prior to effecting an arrest or, as Elko testified, advising Elko "[y]ou're under f**king arrest. You stupid f**king dike." (Tr. 462.)

{¶ 47} We find that, based on the facts and circumstances of this case, there was sufficient evidence to support Elko's request that the trial court instruct the jury

that the officers' use of excessive force serves as a complete defense to the charge of resisting arrest.

{¶ 48} Elko's assignment of error has merit.

## III. Conclusion

{¶ 49} Elko's conviction for resisting arrest is hereby reversed and the case is remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, P.J., CONCURS;
RAYMOND C. HEADEN, J., CONCURS WITH
SEPARATE OPINION


RAYMOND C. HEADEN, J., CONCURRING:

{¶ 50} The standard of review for an appellate court when reviewing a trial court's decision whether to issue a jury instruction is an abuse-of-discretion standard based on the facts and circumstances of the case. *State v. Price*, 2019-Ohio-1642, 135 N.E.3d 1093, ¶ 38 (8th Dist.), citing *Berardi's Fresh Roast, Inc. v.*

*PMD Ents., Inc.*, 8th Dist. Cuyahoga No. 93920, 2010-Ohio-5124, ¶ 12. An abuse of discretion stands for more than an error of law or judgment, but implies an unreasonable, arbitrary, or unconscionable attitude of the court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Whether the failure to issue a jury instruction is unreasonable under the circumstances of this case, i.e. whether the trial court unreasonably failed to permit Elko a jury instruction on the affirmative defense of whether the arresting officers used unnecessary or excessive force is very fact-specific. In essence, what Elko is appealing is for the jury to be able to decide — based on the facts of her case — whether she was resisting not a lawful arrest, but rather an unlawful arrest.

{¶ 51} Based on the record before us, I agree with my colleagues that it was unreasonable for the trial court to not issue a jury instruction on the question of whether the arrest became unlawful as a result of excessive or unnecessary force used by the arresting officers. The record included not only Elko's testimony, but also footage from the body cameras and dash cameras of the arresting officers. Body camera and dash camera video was put into place by police departments to protect both the public and officers when making arrests. A jury instruction in this case on whether excessive or unnecessary force was applied during Elko's arrest, therefore, protects both the public and the officers. When resisting an unlawful arrest is averred by a defendant, and the record can reasonably support such an averment, a jury verdict can provide much needed guidance to both the public and officers on the limits of arresting powers. Whether, when, and how a lawful arrest becomes an

unlawful arrest allowing a person to defend him or herself is front and center in our national consciousness. Based on the record here, the question of whether Elko resisted an unlawful arrest is a question of fact that the trial court unreasonably prevented the jury from deciding when it determined not to issue a jury instruction on whether Elko possessed an affirmative defense of resisting an unlawful arrest.