[Cite as *State v. Jones*, 2022-Ohio-2122.]

STATE OF OHIO         )             IN THE COURT OF APPEALS
                           )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

STATE OF OHIO                       C.A. No.     30036

    Appellee

    v.                              APPEAL FROM JUDGMENT
                                   ENTERED IN THE
TERRELL JONES                    BARBERTON MUNICIPAL COURT
                                   COUNTY OF SUMMIT, OHIO
    Appellant                 CASE No.     19 CRB 02875

DECISION AND JOURNAL ENTRY

Dated: June 22, 2022

TEODOSIO, Presiding Judge.

**{¶1}** Appellant, Terrell L. Jones, appeals from his conviction for resisting arrest in the Barberton Municipal Court. This Court affirms.

I.

**{¶2}** Police were called to the Giant Eagle in Green for a reported theft involving two individuals. The loss prevention officer ("D.P.") had observed a woman placing store items into her purse and pockets without paying for them. While being questioned in the manager's office, the woman's companion ("Mr. Jones") remained in and around the doorway area. When the first Sheriff's deputy arrived, he asked Mr. Jones if he was involved, and the situation instantly escalated, whereby Mr. Jones was handcuffed and told to sit down. Lots of arguing back and forth ensued, and Mr. Jones refused to follow any instructions from police. Instead of standing up to be escorted out of the store by deputies, Mr. Jones became deadweight and claimed he had back and ankle problems. Following failed attempts by two deputies to carry him out of the store and,

alternatively, to get him into a wheelchair, Mr. Jones was ultimately carried to the store's exit by four deputies, at which time he stood up and walked out of the store unassisted.

{¶3} Mr. Jones was charged with theft and resisting arrest. The trial court granted Mr. Jones' Crim.R. 29 motion with respect to the theft charge and dismissed that count. A jury then found him guilty of resisting arrest, a misdemeanor of the second degree, and found that he did not prove his affirmative defense of excessive force by the police. The court sentenced him to 90 days in jail, with overflow permitted to the Community Alternative Sentencing Center ("CASC"), and ordered him to pay a $500.00 fine.

{¶4} Mr. Jones now appeals from his conviction and raises three assignments of error for this Court's review. We have rearranged his assignments of error to facilitate our review and have consolidated two of them as they address related issues.

II.

**ASSIGNMENT OF ERROR THREE**

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGE LEVIED AGAINST MR. JONES IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶5} In his third assignment of error, Mr. Jones argues that his conviction was not supported by sufficient evidence and that the trial court erred in overruling his Crim.R. 29 motion for acquittal. We disagree.

{¶6} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A

challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶7} One of Mr. Jones' claims under this assignment of error is that "[i]t (sic) plain error for Appellant to not clearly reassert [his Crim.R. 29 motion] on the record." We construe this argument as one alleging ineffective assistance of counsel for trial counsel's failure to renew Mr. Jones' Crim.R. 29 motion for acquittal. Consequently, we need not address it, as an ineffective assistance argument goes beyond Mr. Jones' captioned assignment of error and would need to be set forth in a separate assignment of error. *See* App.R. 12(A)(2); App.R. 16(A). *See also Akron v. Wendell*, 70 Ohio App.3d 35, 46 (9th Dist.1990) ("[W]e need not address [issues that] are not separately set forth as assignments of error."). Nevertheless, even if this argument was set forth in a separate assignment of error, we would find no merit in it because "[a]lthough it is customary for the defense to renew a Crim.R. 29 motion at the close of its case, the failure to do so does not preclude this Court's review of whether a conviction is supported by sufficient evidence and thus does not constitute ineffective assistance of counsel." *State v. Payne*, 9th Dist. Lorain No. 18CA011383, 2019-Ohio-4218, ¶ 28.

{¶8} Mr. Jones also contends that "the trial court erred as a matter of law when it overruled Jones' Crim.R. 29 [m]otions" and "[t]he State failed to present sufficient evidence that

4

[Mr. Jones] committed the offense of resisting arrest." These conclusory statements are accompanied only by citations to the record regarding testimony elicited at trial establishing: (1) Mr. Jones was initially detained; (2) Deputy Norris arrested Mr. Jones for resisting an arrest for failure to identify himself; and (3) Mr. Jones was never charged with failing to identify himself. Mr. Jones presents no articulated argument, however, challenging the sufficiency of the evidence or contending that the State failed to introduce sufficient evidence of any essential elements of resisting arrest; nor does he offer any supporting argument or reasons why the trial court erred in denying his Crim.R. 29 motion. *See* App.R. 16(A)(7); Loc.R. 16(A)(7). Consequently, this Court could simply disregard this assignment of error pursuant to App.R. 12(A)(2). In the interest of justice, however, we will nonetheless assess the sufficiency of the State's evidence in this matter.

{¶9} Mr. Jones was convicted of resisting arrest under R.C. 2921.33(A), which prohibits "recklessly or by force * * * resist[ing] or interfer[ing] with a lawful arrest of the person or another." The State was therefore first required to introduce evidence of a "lawful arrest." *See* R.C. 2921.33(A). *See also Elyria v. Tress*, 73 Ohio App.3d 5, 9 (9th Dist.1991) (clarifying that the statute does not prohibit resisting *unlawful* arrest). "[A]n arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." *State v. Darah*, 64 Ohio St.2d 22, 26 (1980). "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *Id.* "An arrest is 'lawful' if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed." *State v. Wigle*, 9th Dist. Summit No. 25593, 2011-Ohio-6239, ¶ 11, quoting *State v. Sansalone*, 71 Ohio App.3d 284, 285-286 (1st

Dist.1991). "To prove that there was a lawful arrest, 'the state must prove not only that there was a reasonable basis to believe an offense was committed, but also that the offense was one for which the defendant could be lawfully arrested.'" *State v. Vactor*, 9th Dist. Lorain No. 02CA008068, 2003-Ohio-7195, ¶ 34, quoting *State v. Thompson*, 116 Ohio App.3d 740, 743-744 (1st Dist.1996). Notably, "[t]he state need not prove that the defendant was in fact guilty of the offense for which the arrest was based when proving the element of lawful arrest." *Id.*

{¶10} D.P. was working as Giant Eagle's undercover loss prevention officer that day. She testified at trial that she observed a woman placing store items in her purse and pockets without paying for them. The woman was accompanied by Mr. Jones, but D.P. testified that she did not see Mr. Jones personally concealing any store items. The woman was brought to the manager's office for questioning, and Mr. Jones followed. The police were notified that two individuals were suspected of shoplifting. D.P. testified that Mr. Jones remained in the general area of the office doorway and was "[j]ust argumentative about everything." According to D.P., Mr. Jones was not cooperative, and instead began recording her with his cell phone, asking a lot of questions, and arguing. Surveillance footage from the store appears to corroborate D.P.'s testimony. It shows Mr. Jones leaning on the office door while looking inside of the office for much of the 13-minute questioning of his companion inside. The video shows Mr. Jones sometimes using his cell phone, but also gesticulating and verbally engaging in the office conversation at times.

{¶11} Deputy Steve Norris testified that he was the first to arrive at the store in response to a reported theft involving two individuals. He testified that theft is an arrestable offense. According to the deputy, he observed both Mr. Jones and his companion inside of the manager's office when he arrived. The deputy's body cam footage shows Mr. Jones standing just inside of the doorway, but he backs out of the office upon noticing the deputy approaching him. The deputy

points into the office and twice asks Mr. Jones, "Are you involved with this?" Mr. Jones responds both times, "Involved with what?" The deputy testified that, based on his 23-years of experience in law enforcement, individuals who respond in this manner are trying to hide something. He testified that it was his reasonable understanding that Mr. Jones knew exactly what he was referring to because both suspects were in the office when he arrived. The surveillance footage also shows that after asking Mr. Jones if he was involved the deputy looks over to D.P., who is standing nearby and appears to nod affirmatively to the deputy. The deputy also testified that, while investigating the theft, he asked Mr. Jones for his identification more than once, but Mr. Jones failed to identify himself. *See* R.C. 2921.29(A)(1) (proscribing the refusal to disclose one's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects the person is committing, has committed, or is about to commit a criminal offense). Under these circumstances, we conclude that a rational jury could have found that Deputy Norris had a reasonable basis to believe Mr. Jones failed to identify himself and was also one of the two individuals involved in the reported theft. *See Vactor* at ¶ 34 (determining that a lawful arrest requires a reasonable basis to believe an offense for which the defendant could be lawfully arrested was committed).

{¶12} Deputy Norris also testified that the initial detainment of Mr. Jones escalated into an arrest. In the body cam video, the deputy tells Mr. Jones to turn around and he attempts to handcuff him. The deputy testified that he was concerned Mr. Jones might have a weapon because he kept putting his hands in his pockets. He also testified that, based on his experience, he was concerned Mr. Jones was possibly going to run because he kept turning around to look at the deputy, as if he was looking for an exit. The deputy unholstered his taser in response and aimed it at Mr. Jones, but did not deploy it. Once the deputy re-holstered his taser and secured Mr. Jones in handcuffs, he told him to sit down on the floor, but Mr. Jones would only squat near the ground.

The deputy testified that he did not kick Mr. Jones, but only "tapped his foot" "[t]o get him to understand that [he] wanted [Mr. Jones'] feet out from underneath him." According to the deputy, he then asked Mr. Jones to just stand up because he was not cooperating and "[they] were going to the car at that point." Deputy Norris testified that, during his theft investigation, he arrested Mr. Jones for failing to identify himself. In the body cam footage, once Mr. Jones is told to stand up, he immediately sits down on the ground and then refuses to stand up, claiming back (and then ankle) problems. Some back-and-forth arguing occurs, and Deputy Norris tells Mr. Jones three times, "You're going to jail." Under these circumstances, we conclude that sufficient evidence was introduced for a rational jury to conclude that Mr. Jones was in fact arrested and that the arrest was lawful. *See Darah* at 26 (requiring an intent to arrest under a real or pretended authority, accompanied by an actual or constructive seizure or detention of the person, which is so understood by the person arrested); *Vactor* at ¶ 34.

{¶13} Next, the State was required to introduce sufficient evidence that Mr. Jones "resist[ed] or interfer[ed]" with his lawful arrest either "recklessly or by force." R.C. 2921.33(A). The Ohio Jury Instructions for the offense of resisting arrest define "resist or interfere" as "to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law-enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct." *Ohio Jury Instructions*, CR Section 521.33 (Rev. May 22, 2021). *See also* 1973 Legislative Service Commission comment to R.C. 2921.33 (stating resisting arrest "may be committed through the use of force, or recklessly by any means, such as 'going limp.'"). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "Force" is defined as "any violence,

compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶14} Multiple Sheriff's deputies testified at trial as to Mr. Jones' behavior throughout the entire ordeal. Deputy Norris testified that Mr. Jones struck him with his shoulder when he was initially handcuffed and ordered down to the ground. He also testified that Mr. Jones was uncooperative, noncompliant, failed to follow simple instructions, and refused to stand up, claiming both back and ankle problems. Deputy Norris further testified that once the deputies stood Mr. Jones up onto his feet he "collapse[d] back down on the ground" and "became deadweight[,]" which required them to "grab him [and] hold him so he didn't hit the ground hard."

{¶15} Deputy Monica Wilkinson was second to arrive on scene and testified that Mr. Jones was yelling, arguing, and "being kind of disorderly." She testified that Mr. Jones would not cooperate and would not stand up, despite offers of assistance from the deputies to help him.

{¶16} Detective Byron Cadwell also responded to the store. He testified that Mr. Jones was sitting on the ground, would not stand up, and would not follow any directions. According to Deputy Cadwell, Mr. Jones was defiant and refused to do anything asked of him, such as standing up and walking out of the store. He characterized Mr. Jones' behavior as "resisting arrest," and testified: "I believe he was a more passive resister, just not offering any help. He wasn't pulling away or pushing us or anything, just he was basically dropping his weight, making it almost impossible for us to pick him up or move him * * *." The deputy testified that Mr. Jones accused the deputies of being racist and was using expletives toward them. Mr. Jones complained of back and ankle problems, yet Deputy Cadwell testified that Mr. Jones joked and laughed at one point, not appearing to be in any pain, and said, "I'm a big boy" as deputies struggled to carry him out of the store. A wheelchair was soon brought for Mr. Jones, and the deputies tried to help him into

it, but Deputy Cadwell testified that Mr. Jones remained uncooperative, and their attempts to help him into it were futile. The deputy testified that Mr. Jones later stood up and walked out of the store with no further complaints about his back or ankle.

{¶17} The body cam footage reveals that once Mr. Jones is handcuffed and told to sit down, he becomes exceedingly recalcitrant and refuses to follow any instructions, claiming that injuries to both his back and his ankle are preventing him from being able to stand up and walk. The video reveals that when told to sit on the floor, Mr. Jones only squats near the floor. When told to stand up, Mr. Jones immediately chooses to sit on the floor instead. In the surveillance footage, three deputies are seen lifting him into a standing position. Mr. Jones takes only a step or two before collapsing and becoming deadweight. In the body cam footage, two of the deputies struggle to carry him through the store and have to stop for a moment. Mr. Jones laughs and says, "Yeah, I'm a big boy. I'm a big boy." When the deputies try to help him into a wheelchair, they are unable to do so, as Mr. Jones yells and taunts them with statements like, "Why you winded?"; and "You good, man? Come on, man, grab a hand. It's your, it's your, it's your bait. It's your catch." At various times, Mr. Jones swears at the deputies and accuses them of racism. When two more deputies arrive, the four deputies are still unable to get Mr. Jones into the wheelchair. They then have to carry him further through the store. Once near the store's exit, Mr. Jones seemingly permits one deputy to help him to his feet, at which time he walks out of the store without further complaint. By that time, 13 minutes had elapsed since Mr. Jones was initially handcuffed and ordered to sit down.

{¶18} We conclude that the evidence presented, if believed, was sufficient to show that Mr. Jones' actions delayed his arrest, as it required two to four deputies to forcefully carry him through the store after he went limp. *See State v. Thomas*, 9th Dist. Wayne No. 2910, 1995 WL

39402, *2 (Feb. 1, 1995) ("[C]onduct which delays an arrest procedure, or requires the use of additional force in an arrest procedure, may constitute resisting arrest."). A wealth of evidence was introduced that showed Mr. Jones refusing to follow instructions, refusing to stand up, becoming deadweight to force deputies to carry him, repeatedly frustrating their attempts to help him into a wheelchair, and being completely uncooperative during his lawful arrest, which we conclude was sufficient to allow a rational jury to find that he recklessly resisted or interfered with that arrest. *See Ohio Jury Instructions*, CR Section 521.33 (Rev. May 22, 2021) (defining "resist or interfere" as to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law-enforcement officer by the use of force or recklessly by any means, *such as going limp*, or any other passive or indirect conduct.); 1973 Legislative Service Commission comment to R.C. 2921.33 (stating resisting arrest may be committed through the use of force, or recklessly by any means, *such as going limp*).

**{¶19}** Accordingly, when viewing the State's evidence in a light most favorable to the prosecution, we conclude that the evidence presented was sufficient to allow a rational jury to find all of the elements of resisting arrest proven beyond a reasonable doubt. *See* R.C. 2921.33(A). We further conclude that the trial court did not err in denying Mr. Jones' Crim.R. 29 motion for acquittal.

**{¶20}** Mr. Jones' third assignment of error is overruled.

<u>**ASSIGNMENT OF ERROR ONE**</u>

THE JURY FINDING THAT MR. JONES[] FAILED TO PROVE HIS AFFIRMATIVE DEFENSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

<u>**ASSIGNMENT OF ERROR TWO**</u>

MR. JONES' CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE POSSESSION (SIC) IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶21}  In his first assignment of error, Mr. Jones argues that the jury's finding that he failed to prove his affirmative defense of excessive force was against the manifest weight of the evidence. In his second assignment of error, he argues that his resisting arrest conviction was against the manifest weight of the evidence because excessive force was used while he was detained (but not under arrest); and the State therefore failed to prove that he resisted a "lawful arrest."  We disagree with both propositions.

{¶22}  A challenge to the manifest weight of the evidence concerns the State's burden of persuasion.  *State v. Klafczynski*, 9th Dist. Medina No. 18CA0084-M, 2020-Ohio-3221, ¶ 7.  This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony."  *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.  This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  *See also Otten* at 340.

{¶23} Excessive force has been recognized by Ohio courts and the Ohio Jury Instructions as being an affirmative defense to resisting arrest. *See State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271, and C-200272, 2021-Ohio-3086, ¶ 32; *State v. Elko*, 8th Dist. Cuyahoga No. 109082, 2020-Ohio-4466, ¶ 45; *State v. Gillam*, 2d Dist. Montgomery No. 27998, 2019-Ohio-808, ¶ 25; *State v. Napier*, 12th Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 32; *Mansfield v. Studer*, 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840, ¶ 97; *State v. Logsdon*, 3d Dist. Seneca No. 13-89-10, 1990 WL 197883, *2 (Dec. 4, 1990); *Ohio Jury Instructions*, CR Section 521.33 (Rev. May 22, 2021). In alleging excessive force by an officer to defend against a resisting arrest charge, "the defendant effectively admits his resistance, if only to show that it was necessary in order to protect himself from the officer's excessive force." *Logsdon* at *2. "The defense is peculiarly within the knowledge of the defendant because only the defendant can adequately demonstrate to the trier of fact the point at which he felt he had to protect himself from the actions of the arresting officer." *Id.* "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense * * * is upon the accused." R.C. 2901.05(A).

{¶24} In *Tennessee v. Garner*, the United States Supreme Court analyzed a claim of excessive force while effecting an arrest under a Fourth Amendment standard and held that "[w]here [an] officer has probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Four years later, in *Graham v. Connor*, the Supreme Court "[made] explicit what was implicit in *Garner's* analysis" and held that "*all* claims that law enforcement officers have used excessive force—deadly or not— in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

under the Fourth Amendment and its 'reasonableness' standard * * *." (Emphasis sic.) *Graham v. Connor*, 490 U.S. 386, 395 (1989). Although *Garner* and *Graham* both involved an officer's civil liability for deprivation of civil rights under color of law, courts also apply these cases when reviewing criminal convictions. *See State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 24-25. The Supreme Court has cautioned, however, that *Garner* and *Graham* "are cast at a high level of generality" and "do not by themselves create clearly established law outside 'an obvious case.'" *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *White v. Pauly*, ___ U.S. ___, 137 S.Ct. 548, 552 (2017).

{¶25} The *Graham* Court stated that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual[']s Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham* at 396, quoting *Garner* at 8, quoting *United States v. Place*, 462 U.S. 696, 703 (1983). Proper application of the reasonableness test requires careful attention to the facts and circumstances of each particular case, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham* at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-397. With that in mind, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts

and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. *Accord Cty. of Los Angeles v. Mendez*, ___ U.S. ___, 137 S.Ct. 1539, 1546-1547 (2017), quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001), *overruled in part on other grounds, Pearson v. Callahan*, 555 U.S. 223, 236 (2009). ("'Excessive force claims * * * are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.'").

**{¶26}** In these two assignments of error, Mr. Jones presents this Court with an amalgam of overlapping and interrelated manifest weight arguments. He contends that the jury clearly lost its way in not finding that Deputy Norris used excessive force: (1) in pulling out his taser and pointing it at Mr. Jones; and (2) by kicking Mr. Jones while he was handcuffed and squatting near the ground. He further claims that he was only being detained to determine his identity when the deputy "pulled his taser and escalated the matter into an arrest." Because he claims he was not under arrest when the alleged excessive force occurred, Mr. Jones argues that the State could not prove that he resisted a "lawful arrest." While he concedes that he was argumentative and uncooperative during the incident, Mr. Jones also argues that he was not *actively* resisting arrest. Thus, he contends that his conviction for resisting arrest was against the manifest weight of the evidence, as the jury clearly lost its way and created a manifest miscarriage of justice.

**{¶27}** Despite it being his burden to prove by a preponderance of the evidence that law-enforcement officers used excessive force, *see* R.C. 2901.05(A), Mr. Jones presented no evidence at trial, save for a confidential investigation report that was admitted into evidence. The State, on the other hand, presented both surveillance and body cam footage, along with the testimony of three deputies and one loss prevention officer. The evidence showed that *two* individuals were reported to police as being involved in the theft. The surveillance and body cam footage showed an initial detainment that rapidly escalated into an arrest. In a matter of seconds, Deputy Norris

approached Mr. Jones (who was standing in the manager's office), asked him if he was involved, told him to take his hands out of his pockets, asked him to turn around, and attempted to handcuff him. The deputy testified that, based on his experience and Mr. Jones' behavior, he thought Mr. Jones might have a weapon and was going to run, so he "push[ed] off of him and pull[ed] [his] Taser out of the holster" for safety purposes, but did not deploy it. It is worth noting that "the right to make an arrest * * * necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (Internal quotations and citation omitted.) *Graham* at 396. Deputy Norris soon re-holstered his taser, handcuffed Mr. Jones, and told him to sit on the floor. Mr. Jones only squatted down, however, so the deputy testified that he "tapped his foot * * * [t]o get him to understand that [he] wanted his feet out from underneath him." The surveillance footage corroborates the deputy's testimony and shows him slightly tapping Mr. Jones' foot, exerting what appears to be very little force in doing so.

{¶28} Mr. Jones directs us to multiple, federal circuit court decisions to support his position that the use of a taser is not justified in situations involving either passive resistance or no resistance at all. *See Wright v. City of Euclid*, 962 F.3d 852 (6th Cir.2020); *Smith v. City of Troy*, 874 F.3d 938 (6th Cir.2017); *Brown v. Chapman*, 814 F.3d 447 (6th Cir.2016); *Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir.2015); *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir.2013); *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505 (6th Cir.2012). These cases are all factually distinguishable though because, unlike Mr. Jones' case, they all involved the actual deployment of tasers. Here, while Deputy Norris unholstered his taser and briefly aimed it at Mr. Jones' back, he never deployed it. Mr. Jones has directed us to no legal authority establishing that the mere unholstering or aiming of a taser at a suspect constitutes unreasonable and excessive force by a

law-enforcement officer. Citing to more Sixth Circuit case law, Mr. Jones then seeks to establish that an officer's aiming of a firearm at an individual may constitute excessive force. *See Vanderhoef v. Dixon*, 938 F.3d 271 (6th Cir.2019); *United States v. Bolden*, 479 F.3d 455 (6th Cir.2007); *Binay v. Bettendorf*, 601 F.3d 640 (6th Cir.2010). Reliance on these cases is inapposite though, as Deputy Norris aimed a taser at Mr. Jones, not a firearm. Mr. Jones directs us to no legal authority establishing that aiming a taser at a suspect is the functional equivalent of aiming a firearm at him for purposes of establishing excessive force in resisting arrest cases.

**{¶29}** When considering the three *Graham* factors, we agree with Mr. Jones that shoplifting is not a severe crime. As to whether he posed an immediate threat to the deputies or others, however, Deputy Norris testified that he drew his taser for officer safety. The deputy testified that he was concerned Mr. Jones could have a weapon because "[h]e kept putting his hands in his pocket[s]." He further testified that he was "by [him]self" with "[m]ultiple subjects present" and "did not want to get in a physical confrontation with [Mr. Jones,]" who is "a fairly large individual." We cannot say that the deputy's concern here was unreasonable under the circumstances. While only misdemeanors were at issue here, "the assumption that a 'felon' is more dangerous than a misdemeanant" has been deemed "untenable." *Garner* at 14. Moreover, if an officer reasonably believes that a suspect is likely to fight back, even if his belief is mistaken, the officer is justified in using more force than in fact is needed. *White*, 142 Ohio St.3d 277, 2015-Ohio-492, at ¶ 60, citing *Saucier*, 533 U.S. at 205. As to whether Mr. Jones was actively resisting arrest or attempting to evade arrest by flight, Deputy Norris testified that Mr. Jones was "making the movements like he was looking for an exit" and "kind of turn[ed] around and look[ed] -- start[ed] look[ing] at [the deputy,]" which led the deputy to believe, based on his experience, that Mr. Jones was "possibly going to run."

{¶30} An excessive force defense purports to justify resisting arrest "where the defendant is effectively being assaulted and responds with reasonable force to protect his safety," yet Mr. Jones never demonstrated how going limp or becoming deadweight and refusing to cooperate with the arresting deputies over the span of 13 minutes "was necessary in order to protect himself" from earlier having a taser pointed at him and having his foot "kicked." *State v. Barnes*, 1st Dist. Hamilton Nos. C-170355 and C-170356, 2018-Ohio-3894, ¶ 14; *Logsdon*, 1990 WL 197883 at *2. The evidence showed that Deputy Norris only briefly aimed (but never deployed) his taser, and the alleged "kick" constituted de minimis contact at best; neither action resulted in any injuries to Mr. Jones. It was therefore not unreasonable for the jury to conclude that Deputy Norris' actions, when viewed from the perspective of a reasonable officer at the scene, were objectively reasonable in light of the facts and circumstances confronting him. *See Graham* at 396-397. Accordingly, we find no merit in Mr. Jones' argument that the jury clearly lost its way and created a manifest miscarriage of justice in finding that he failed to prove his affirmative defense of excessive force by a preponderance of the evidence.

{¶31} We also find no merit in Mr. Jones' contentions that he was merely detained when the alleged excessive force occurred and that the jury clearly lost its way in finding that the State proved a "lawful arrest" occurred. Mr. Jones never refuted the State's evidence at trial that his initial detainment ultimately turned into an arrest. Once Mr. Jones was handcuffed, he became uncooperative and refused to sit down or follow any instructions. The evidence showed that Deputy Norris soon told Mr. Jones to stand up because "[they] were going to the car at that point" and that Mr. Jones was being arrested for failing to identify himself during the theft investigation. The evidence further established that Deputy Norris told Mr. Jones three times, "You're going to jail." Since the unrefuted evidence demonstrated that Deputy Norris intended to arrest Mr. Jones,

under a real authority, and Mr. Jones was handcuffed and told he was under arrest, it was not unreasonable for the jury to determine that Mr. Jones understood he was being arrested and, in fact, was arrested. *See Darah* at 26. A rational jury could also find that the arrest was lawful because the evidence demonstrated that Deputy Norris had a reasonable basis to believe Mr. Jones had committed two arrestable offenses, e.g., theft and failure to disclose one's personal information. *See Vactor* at ¶ 34. The evidence also demonstrated that Mr. Jones resisted arrest for approximately 13 minutes after being handcuffed and told he was going to jail. Consequently, after reviewing the evidence, we cannot say that the jury lost its way in finding that a "lawful arrest" occurred in this matter.

{¶32} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the jury, in resolving any conflicts in the evidence, lost its way and created a manifest miscarriage of justice requiring reversal of Mr. Jones' conviction and a new trial. *See Otten* at 340. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts" and this Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. The jury in this matter not only had ample witness testimony to consider when reaching its decision, but also two videos of the entire incident to help it resolve any issues of credibility or inconsistencies in the witness' testimony. *See State v. Gay*, 9th Dist. Summit No. 26487, 2013-Ohio-4169, ¶ 26. This is also not an exceptional case where the evidence presented weighs heavily in Mr. Jones' favor and against conviction. *See Thompkins* at 387.

**{¶33}** Mr. Jones' first and second assignments of error are both overruled.

### III.

**{¶34}** Mr. Jones' three assignments of error are all overruled. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

JENNIFER A. ROBERTS, Prosecuting Attorney, for Appellee.